WARREN G. KENNEDY ET UX *v.* E. A. STROUT REALTY AGENCY, INC. ET AL

5-6177 490 S.W. 2d 786

Opinion delivered February 26, 1973

*Walker, Campbell & McCorkindale,* for appellants.

*John B. Driver,* for appellees.

LYLE BROWN, Justice. Kennedy and wife sued appellees to cancel a land sale contract and for consequential damages for misrepresentation as to the water supply. Cancellation and damages were denied and appellants contend the court's findings were against the preponderance of the evidence and contrary to the law.

*Status of the Parties.* Appellee Strout Realty Co. and its agent, appellee L. A. Potter, had a listing on the subject property and the offer and acceptance were executed by Potter. At the conclusion of the trial it was conceded by appellants that they had not made a case against Strout and Potter. Appellee Rex Killebrew was the record owner of the property but it is not contended he made any representations concerning the lands. Appellee Freddy Sutterfield had a partnership arrangement with Killebrew. Sutterfield would check on property for sale; Killebrew would put up the money and take the title. When Sutterfield firmed up a sale of land so acquired, Killebrew would be refunded his money and the profits would be divided. It was Sutterfield who negotiated the sale with the appellants and it was Sutterfield who is alleged to have made false representations concerning the ability of springs on the land to produce a supply of water ample for modern household purposes.

This suit concerns a 133-acre tract of land in Searcy County. Late in 1969, or early in 1970, title to the acreage became vested in Rex Killebrew. Negotiations on behalf of Killebrew were conducted by Freddy Sutterfield, agent for, or partner of, Killebrew. On August 5, 1970, Sutterfield listed the property with the local operator of Strout Realty Agency. The listing described the property and improvements in detail. With respect to water supply the listing read: "two spring, one pond". Sutterfield first listed only 100 acres of the tract and at an asking price of $18,500. On the listing Sutterfield related that the house on the property was complete except for running water and bath and concluded that "Owner agrees to put spring water in".

After considerable negotiations, the Kennedys entered into a purchase contract on May 14, 1971, whereby they agreed to buy the 133 acres for $17,500. The Kennedys

entered into possession and made considerable improvements to the house. During the early period of possession they said they discovered that the two springs which Sutterfield represented would produce plenty of water, were mere wet weather springs. When Killebrew refused to cancel the sale and return the down payment, the Kennedys brought this suit. They alleged that false and fraudulent representations were made to them concerning the ability of the springs to furnish ample water for household purposes. The trial court found that the existing water supply furnished by the springs was not adequate to furnish the household with continuous water supply unless they could be more fully developed. However, the court concluded that the Kennedys failed to establish by a preponderance of the evidence that fraudulent representations upon which the Kennedys had a right to rely, were made with reference to the water supply.

There are two facts which stand out in the evidence and which require a reversal. First, we think it undisputed that Kennedy made it known to all parties his desire for a sufficient amount of water for household purposes. Second, we think the evidence preponderantly shows that the so-called springs were mere wet weather springs. We shall discuss the first point with particular reference to the representations made by Sutterfield. It was Sutterfield who executed the listing with Strout Realty. On the line that was printed the words "Source of Water", Sutterfield inserted "two spring, one pond". Then on the second page Sutterfield inserted this statement: "Home is complete except for running water and bath. Owner agrees to put spring water in". The obligation of the owner to install water was not in the final sale and purchase contract. That is because the listing was for 100 acres for $18,500; the purchase was consummated for 133 acres and for $17,500. However, it was bound to be encouraging to Kennedy that Sutterfield thought there was enough water to service the home. The listing was shown to Sutterfield by Potter. At one point in his testimony, Sutterfield insisted that he made no contact with Kennedy prior to the signing of the papers. But questions by the trial court showed a different situation. Sutterfield testified that before the sale and purchase contract was signed, Kennedy called him on the telephone.

The Court: Was there anything said about the adequacy of the water supply for a house by you or him?

A. Yes, I told him I thought there was plenty of water there for a house.

The Court: Now, this was in this telephone conversation?

A. Yes.

This brings us to the capacity of the water supply. The evidence is clear and convincing that the springs relied upon by Sutterfield in his assurances to Kennedy were mere wet weather springs. (Incidentally, the point where a quarter-inch pipe had been stuck into the crevice in a rock and dripped water in wet weather was actually not inside the property line of the tract sold Kennedy.)

Ted Scarlett testified that he owned the property about three years ago and sold it to Sutterfield because there was no water supply. The farm of Charless Knee adjoins the Kennedy farm and runs along the hollow where the springs are located. He said water came out of the pipe when it was real wet weather. He described the springs as being wet weather springs. Elton Campbell testified that he lived on the subject property twenty years; that the only spring on the property was a wet weather spring; and that most of any given year they would haul water from other sources. Witnesses Ennis Campbell and Britt Head, both of whom showed considerable familiarity with the property, verified the other testimony with reference to there being no running water on the property. Head testified that at Kennedy's request, he dynamited for water in the vicinity of the spring but without success. Loyd Girod, witness for appellees, testified that when he showed the spring to Kennedy there were two small puddles of water, "small trickles". L. A. Potter, another witness for appellee, testified that he viewed the springs with Kennedy and that there were two puddles of water created by small trickles. From testimony supplied by appellees from some elderly citizens it appears reasonably certain that years ago there was an active spring on

the property which furnished a limited source of water supply but the supply has receded to a small trickle of water in wet weather.

It was not necessary that the Kennedys establish actual fraud on the part of Sutterfield. "[R]epresentations are construed to be fraudulent when made by one who either knows the assurances to be false or else not knowing the verity asserts them to be true". *Lane* v. *Rachel*, 239 Ark. 400, 389 S.W. 2d 621 (1965). In other words it is clear to us that Sutterfield asserted the adequacy of the water to be true when in fact he had no reasonable foundation for making such representation.

The cause is reversed and remanded. The Kennedys are entitled to recover from Killebrew and Sutterfield the full amount of all payments made on the purchase price, together with recovery for improvements made to the property in good faith.

Reversed and remanded.