Melvin TUCKER, as Director of the Arkansas State
Plant Board and Public Grain Warehouse Commissioner *v.*
Leslie E. DURHAM, d/b/a Durham Grain Company,
Farm Bureau Mutual of Arkansas, Inc.

84-378                                                686 S.W.2d 402

Supreme Court of Arkansas
Opinion delivered March 18, 1985

*Steve Clark*, Att'y Gen., by: *Robert R. Ross*, Dep. Att'y Gen., for appellant.

*Rice L. VanAusdall*, for appellees.

DAVID NEWBERN, Justice. The appellant, Tucker, in his capacity as public grain warehouse commissioner, became the receiver, pursuant to Ark. Stat. Ann. § 17-1344 (Supp. 1983), for the appellee, Durham, who was a public grain warehouseman. Appellee Farm Bureau, which had issued its bond covering Durham, was made a party to the receivership proceeding. The only grain in Durham's warehouse when the receivership was created was a small amount belonging to Durham, so the purpose of the receivership proceeding became to divide the bond proceeds among persons who had claims to grain which should have been in the warehouse.

Tucker, in accordance with Ark. Stat. Ann. § 77-1345 (Supp. 1983), filed a distribution plan with the court. Kenneth Branum, Parker Farms, Inc., and the R.G. Lamb Trust intervened and objected to the proposed plan because they held receipts for grain they had delivered to Durham, but they were not included in the plan for bond money distribution. Each of these depositors had received an advance payment on grain delivered to Durham, and Tucker contended they had thus sold the grain to Durham. The trial court held these depositors were entitled to participate in the bond money. Thus the first issue in this appeal is whether a depositor who takes an advance payment for grain is considered to have sold the grain to the warehouseman and

thus removed himself from protection of the warehouseman's bond. It is not suggested that one who has sold grain to the warehouseman, as opposed to one who has stored it with the warehouseman, is entitled to the protection of the warehouseman's bond for money which might remain owing on the purchase price.

Tucker's plan also excluded from participation in the bond money another intervenor named Maddox. Unlike the other intervenors, Maddox had signed a deferred pricing contract by which he explicitly transferred title to Durham of the grain he deposited with Durham. The trial court found that the agreement Maddox had signed had been obtained by fraud. Thus the agreement was declared void, and Maddox was allowed a share of the bond money. The second issue in this appeal has to do with whether the trial court's action was error because, the appellant contends, fraud upon Maddox was not sufficiently pleaded or proven.

Because we must interpret various statutory provisions our jurisdiction rests upon Arkansas Supreme Court and Court of Appeals Rule 29. 1. c.

### 1. Sale or No Sale

The Arkansas Public Grain Warehouse Law, Ark. Stat. Ann. §§ 77-1301 through 77-1338 (Repl. 1981 and Supp. 1983), governs transactions between grain producers and warehousemen licensed as public warehousemen by Tucker. The Uniform Commercial Code, Ark. Stat. Ann. §§ 85-1-101 through 85-9-507 (Add. 1961 and Supp. 1983), governs to the extent it is not inconsistent with the Warehouse Law. Ark. Stat. Ann. § 77-1303(b) (Repl. 1981). In his argument Tucker notes that the Warehouse Law's purpose is to protect those who store grain, and that stored grain is defined in § 77-1302(d) as:

> Any grain received in any public grain warehouse located in this state, if same is not purchased and beneficially owned by the public grain warehouseman.

He argues further that because the Warehouse Law does not

define "purchase" and "beneficial ownership" we are relegated to the U.C.C. and Black's Law Dictionary. Nothing cited in either of those sources is specific or very useful in solving the problem.

We need not look outside the Warehouse Law. It, as noted, protects storers of grain, and it has an explicit provision on relinquishment of that protection. Section 77-1340 is as follows:

> Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman, and no public grain warehouseman shall sell or encumber any grain within his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman. Notwithstanding any provision of the Uniform Commercial Code (Act 185 of 1961 (§ 85-1-101 et seq.), as amended) to the contrary, or any other law to the contrary, all sales and encumbrances of grain by public grain warehousemen are void and convey no title unless such sales and encumbrances are supported by a written document executed by the owner specifically conveying title to the grain to the public grain warehouseman.

Tucker argues we should not be guided by this language because its only purpose is to limit the warehouseman in selling stored grain to third parties and voiding such sales when title has not been conferred, in writing, by the producer upon the warehouseman. The Warehouse Law, however, makes it clear that unless transfer of title from the producer to the warehouseman has occurred, the grain is to be regarded as stored rather than sold, so the giving and taking of an advance payment does not remove the storer from the bond's protection. This position happens to be consistent with Article 2 of the U.C.C. in which "sale" is defined to include passing title from the seller to the buyer for a price. Ark. Stat. Ann. § 85-2-106(1) (Add. 1961).

## 2. Fraud

In contrast with the other depositors discussed above,

Maddox had entered a written deferred pricing contract with Durham. This contract was meant to remove Maddox from protection as a storer of grain. It specifically provided that the title to the grain was transferred to Durham.

Based on testimony and the contract instrument, the trial court found the contract to have been "back dated" and "fraudulently secured." Testimony showed Maddox's beans were delivered to Durham and those beans had been disposed of by Durham as of January 25, 1983. Yet Durham induced Maddox on February 3, 1983, to sign the deferred pricing contract. Maddox testified he did not notice the date on the instrument when he signed it. When it was introduced in evidence, the instrument was dated "10-19-82."

Tucker contends fraud was neither pleaded with particularity sufficient to satisfy Ark. R. Civ. P. 9(b) nor proven by clear and convincing evidence. We are not nearly as concerned about the pleading point as we would be had Tucker shown any prejudice resulting from the alleged lapse. Paragraph 3. of the "objection to plan" filed by Maddox was as follows:

On or about February 3, 1983, Petitioner needed additional money, and went to Durham and drew the sum of $7,000.00. At that time, Petitioner signed a deferred price contract, which did recite he transferred title to the Defendant. However, at that time, it is believed Defendant had already sold, transferred and disposed of his beans, without first obtaining a written document transferring title. That the attempted transfer was void, and because it is void, Petitioner should be permitted to share in the bond proceeds.

The allegation is clear that Durham had disposed of Maddox's beans before Maddox had given Durham title to them. The conclusion of fraud, which Maddox was not required to plead, Harvey v. Eastman Kodak Co., 271 Ark. 783, 610 S.W.2d 582 (1981), is evident.

The requirement of particularity of pleading fraud did not come into Arkansas law altogether with the advent of

Rule 9. It had previously been required, especially when pleaded as an affirmative defense. Evidence of fraud was taken at the trial, and nothing abstracted from the record shows any objection to introduction of that evidence was raised. When evidence of fraud is admitted and the issue is tried without objection, we regard the pleading as amended to conform to the proof. *Van Houten* v. *Better Health Insurance Association of America,* 238 Ark. 815, 384 S.W.2d 465 (1964).

Nor are we in doubt about the proof. Exhibits consisting of the contract instrument dated "10-19-82" and a check to Maddox from Durham dated "2-3-83," which Maddox testified he received on the day the contract was executed, are sufficient to justify the trial court's finding that the contract was "fraudulently secured." Maddox testified, again without contradiction, he received an advance payment of $7,000 from Durham when he signed the contract, and that he was induced to sign by this payment. As the beans had already been disposed of by Durham, the evidence showed clearly a misrepresentation by Durham that Durham still had the beans and Maddox was to receive more money later. But for the contract, Maddox would have been as entitled as other storers to participate in the bond proceeds. Obviously Maddox would not have signed the contract had he known Durham had already illegally disposed of his beans.

The trial court's finding that the contract was fraudulently induced was justified, and it was not error to set the contract aside and allow Maddox to participate in the bond proceeds.

Affirmed.