STROUT REALTY, INC., and H.F. McFARLAND and T.P. McFARLAND *v.* Ray BURGHOFF and Carolyn BURGHOFF

CA 85-376 718 S.W.2d 469

Court of Appeals of Arkansas
Division I
Opinion delivered November 5, 1986

178

*Gardner, Gardner & Hardin*, by: *Stephen C. Gardner*, for appellant.

*Young & Finley*, by: *Dale W. Finley*, for appellee.

JAMES R. COOPER, Judge. This is an appeal from a decision of the Pope County Chancery Court granting the rescission petition of the appellees and requiring the appellants to pay $38,000.00 to the appellees as restitutionary damages. The appellant Strout Realty raises six points on appeal, and the appellants H.F. and T.P. McFarland raise six different points on appeal. We have consolidated several of these points for discussion of their merits. We find no prejudicial error on the part of the chancellor and affirm his decision.

The appellees, Ray and Carolyn Burghoff, sued to rescind a real estate contract and deed, whereby they purchased a resort known as Mack's Pines from the McFarlands. The Burghoffs also sought the return of their down payment from both the McFarlands and Strout Realty, the other appellant in this case. Strout Realty had advertised the property and acted as the agent for the seller in the transaction. The chancellor found that rescission was proper because of fraudulent misrepresentations concerning the availability of water, the income from the operation of the resort, and the amount of acreage involved in the transaction. He ordered the Burghoffs to reconvey the property back to the McFarlands and entered judgment against all the appellants in the amount of $38,000.00, determining that contribution between the parties should be in proportion to the amount each retained from the down payment.

We first discuss the McFarlands' contention that the Burghoff's complaint failed to plead facts sufficient to constitute fraud. The McFarlands objected to the pleadings below on the ground that, while the Burghoffs alleged misrepresentation as to specific items, they did not specifically plead fraud. The appellees

are required to set forth with particularity the facts and circumstances constituting fraud, *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985); however, they are not required to set forth the *conclusion* of fraud. *Tucker* v. *Durham*, 285 Ark. 264, 686 S.W.2d 402 (1985). In other words, the word "fraud" need not be used, it is only necessary that facts set forth in the complaint lead to a conclusion of fraud. The complaint, as amended, alleges that the McFarlands and Strout Realty informed the Burghoffs that the water supply was sufficient to operate the business, that the Burghoffs relied upon these representations in purchasing the resort, and that, in fact, the water supply was insufficient. The appellees also alleged that the McFarlands "fraudently [sic] misrepresented the income of the business as an inducement" and that Strout Realty falsely represented that the plaintiffs were to purchase more than twenty-eight acres of land. The appellees allege reliance on the claims of the defendants in their complaint. We find these allegations sufficient to state a cause of action for fraud.

Next Strout Realty contends that the chancellor erred in allowing the appellees to proceed against them for damages (1) after the appellees had elected their remedy by attempting to rescind the contract and (2) when Strout Realty was not a party to the rescinded contract. Strout Realty first raised the issue of election of remedies at the close of the trial. This is an affirmative defense which must be raised in an answer. *Southern Farmers Association* v. *Wyatt*, 234 Ark. 649, 353 S.W.2d 531 (1962); *see also* Ark. R. Civ. P. 8(c). By failing to raise this issue then, Strout Realty waived the right to assert this defense at trial. Furthermore, the court did not err in holding Strout liable in a rescission action when it was not a party to the contract to be rescinded. The doctrine of election of remedies "applies only between the parties to a transaction so that one party may seek cancellation and then sue a third party for procuring the transaction through fraud." 12 S. Williston, *A Treatise on the Law of Contracts* § 1528 (3d ed. 1970); *accord, Cady* v. *Rainwater*, 129 Ark. 498, 196 S.W. 125 (1917). In *Cady*, a rescission action, the Supreme Court found both the broker and vendor liable for the amount of damages necessary to restore the purchaser to her status prior to entering into the transaction. Strout Realty could properly be held liable for restitutionary

damages.

Both Strout Realty and the McFarlands argue that there is insufficient evidence to show any fraudulent misrepresentations as to water, income, and acreage which would justify rescission. While we would agree if the decree were based solely on the representations regarding acreage, the chancellor's decree is not erroneous, as there is sufficient evidence of fraudulent misrepresentations regarding water and income to justify the rescission and the award of damages.

While we review chancery cases *de novo*, we will not reverse the chancellor unless his findings are clearly erroneous or against a preponderance of the evidence. *Morgan* v. *Morgan*, 8 Ark. App. 346, 652 S.W.2d 57 (1983); Ark. R. Civ. P. 52(a). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor to determine the weight and credibility to be given the testimony. *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981). A finding will be held clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that an error has been made. *RAD-Razorback, Ltd. Partnership* v. *Coney*, 289 Ark. 550, 713 S.W.2d 462 (1986).

When the plaintiff is attempting to overturn a solemn written instrument by proof which alters the written terms of the contract, he must prove the fraudulent misrepresentations by clear and convincing evidence, otherwise the fraud need only be proved by a preponderance of the evidence. *Clay* v. *Brand*, 236 Ark. 236, 365 S.W.2d 256 (1963). Here, the allegation of fraud as to the amount of land to be sold directly contradicts the amount of land set forth in the contract and deed. The other allegations contradict that clause in the contract which states that the appellees are relying on their own investigation of the matter. Therefore, the allegations must be proved by clear and convincing evidence. Clear and convincing evidence is that degree of proof which produces in the factfinder a firm conviction as to the allegation sought to be established; it is not necessary that the evidence be undisputed to be clear and convincing, so long as it imparts a clear conviction to the mind of the factfinder. *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979).

In order to establish fraudulent misrepresentations, it must be shown by the party seeking rescission that the person making the representations knew them to be false or else, not knowing, asserted them to be true; that it was the first party's intent to have the other party rely on them to its injury; and that the representations were relied on. *Croley* v. *Baker*, 237 Ark. 136, 371 S.W.2d 830 (1963); *see also Kennedy* v. *E. A. Strout Realty Agency*, 253 Ark. 1076, 490 S.W.2d 786 (1973).

We will look first at the allegations concerning the sufficiency of the water supply. The testimony regarding this, like almost all the testimony, is conflicting. The Burghoffs testified that Mr. McFarland told them in 1983, when they first looked at the property, that the water was good. Mrs. Burghoff also testified that Terry Harris, the agent for Strout Realty, told her that the water was good; that, if there ever was a water problem, it was fixed now; and that they would always have good water. The Burghoffs testified that they would not have bought the property if they had not been assured the water was sufficient. The evidence also shows that the Burghoffs had difficulty with the water system the entire time they were in possession of the property.

The appellants denied ever telling the appellees that there was a good supply of water on the property. They also contend that any problem with the water supply was the result of the appellees' inexperience with the complicated water system, consisting of four wells interconnected by a series of shutoff valves. There was, however, evidence indicating that the wells were not as productive as they once had been and that measures to conserve water were taken each summer. Mrs. Burghoff testified that Mrs. McFarland had told her after the closing that people were not to take showers or do laundry because there was not enough water. Mrs. Burghoff also stated that the McFarlands knew that the Burghoffs were considering adding a swimming pool, which would increase the demand for water. Considering the conflicting testimony, we cannot say that the chancellor's decision was clearly erroneous.

There is also sufficient evidence to support the finding regarding the misrepresentation of income. It is settled law that false representations by the seller as to present or best

income of the property sold will, if relied upon by the purchaser, constitute actionable fraud. *Hegg* v. *Dickens*, 270 Ark. 641, 606 S.W.2d 106 (Ark. App. 1980). Mrs. Burghoff testified that Mr. McFarland had two sets of books. She stated that the first set did not show enough income to make the monthly payment, pay for improvements, and allow the family to live in the manner to which they were accustomed. Mrs. Burghoff stated that, when she pointed this out to Mr. McFarland, he brought out a second set of books which showed more income than the first set. She further testified that he gave her a statement saying that he had gross sales of $44,000.00 in 1982, but that, based on her observation of traffic on the highway, there was no way that the gross sales could have reached that amount. She added that, while he may have had that amount of gross sales, he could not have paid his expenses and still have had any money left over. Mr. McFarland testified that he told the Burghoffs that they could not make enough money to make the payments, but that they would be able to make a living. He admitted at trial that the best the resort could do was to generate a $12,000.00 loss, excluding annual deprecia- tion. Representing a loss of $12,000.00 as being able to make a living constitutes a fraudulent misrepresentation of the income from the property.

The final allegation of misrepresentation concerns Strout Realty's representation of the acreage of the property. The property was marketed as 28 acres in the catalogue relied upon by the appellees and as 28 acres, more or less, in other brochures. The survey showed the property to contain 26.32 acres. The testimony was in conflict as to whether the Burghoffs had seen the survey prior to the closing: the Burghoffs testified that they had not seen the survey and Mr. McFarland and Mr. Harris testified that they had. Mr. Harris testified that he discussed the discrepancy with Mrs. Burghoff on the telephone prior to the closing. The real estate contract and deed did not specify twenty-eight acres; they merely contained a legal description. While Mrs. Burghoff testified that she would not have bought the property if she had known of the discrepancy in acreage, she also admitted that her family had an opportunity to inspect, and did inspect, the property in 1983. We do not believe that a discrepancy of 1.68 acres on rural resort property would be sufficient, standing alone, to justify rescission of the contract. *See Yeates* v. *Pryor*, 11 Ark.

58 (1850); *Baugh* v. *Johnson*, 6 Ark. App. 308, 641 S.W.2d 730 (1982). Therefore, we modify the decree to delete the reference to acreage.

Strout Realty contends that the chancellor erred in awarding judgment against it because (1) it was a known agent, acting in the scope of its agency, (2) all of its representations were derived from its principal, and (3) there was no evidence of independent fraud on its part. A real estate agent will not be held liable for constructive or legal fraud when "his representation to the buyer was only a repetition, in good faith, of a statement authorized by his principal." *Peek* v. *Meadors*, 255 Ark. 347, 352, 500 S.W.2d 333, 335 (1973). If the agent making the statement does not act in good faith, then he may be held liable, even when his agency is known and he acts under the authority granted him. *See Mayhue* v. *Matthews*, 174 Ark. 24, 294 S.W. 364 (1927); *Cleveland* v. *Biggers*, 163 Ark. 377, 260 S.W. 432 (1924). While a principal is liable for his agent's authorized statements, that liability does not absolve the agent of liability. *Ralls* v. *Mittlesteadt*, 268 Ark. 741, 596 S.W.2d 349 (Ark. App. 1980).

Here, testifying to what Mr. Harris told her prior to the closing, Mrs. Burghoff said,

> Mr. Harris informed me they [the McFarlands] had a problem with one of the wells on the property. That a local pump man . . . was installing a new well and a new pump and a holding tank. And at that time, there would be no water problem at all. . . . He told me at this time when the well was finished there would be no problems, you would always have good water.

Mr. Harris denied making any representation as to the quantity or quality of water on the property. He said that he would not have known about the water situation unless he had received the information from Mr. McFarland, but he stated that he assumed that there was plenty of water there. He further testified that he made no representations that were not authorized by the sellers, nor did he make any false representations. Mr. Harris stated that all he told Mrs. Burghoff was that the pump had been fixed. He testified that he never made any statements to the Burghoffs about water and that the McFarlands never said anything to him

about water. While the evidence is conflicting, we find there to be sufficient evidence to support a finding that Strout Realty informed the appellees that they would have plenty of water without any information on which to base their representation. Because there is undisputed testimony that the McFarlands told Strout Realty nothing about the water situation, it cannot be stated that the statements were merely a good faith repetition of statements made by the principal. Therefore, we find that the chancellor did not err in holding Strout Realty liable for damages.

The McFarlands argue that the court erred by not holding Strout Realty solely liable for the judgment, inasmuch as the misrepresentations regarding water were made by Strout Realty, not the McFarlands. Not only is there evidence that the McFarlands represented the water to be good in 1983, there is evidence that the McFarlands misrepresented the income of the property. The chancellor did not err in holding the appellants jointly liable.

The McFarlands additionally argue that the chancellor erred in finding fraudulent misrepresentations since the Burghoffs had ample opportunity to inspect the property. It is settled law that a purchaser may give credit to statements made by a seller who has peculiar knowledge of the subject matter, as the person who is the recipient of a fraudulent misrepresentation of fact in a business transaction is justified in relying on its truth, even when he might have determined its falsity had he made an investigation. *Fausett & Co. v. Bullard*, 217 Ark. 176, 229 S.W.2d 490 (1950). Here, the only matters which could constitute a basis for misrepresentations, the sufficiency of water and the amount of income, were matters within the peculiar knowledge of the appellants.

The McFarlands also claim that the appellees were not entitled to rescission of the contract because they failed to return the McFarlands to the status quo. As a rule, rescission will be granted only when the party asking for it restores to the other party substantially the consideration received; if he cannot do so he is remitted to an action for damages. *Sandford v. Smith*, 163 Ark. 583, 260 S.W. 435 (1924). Mr. McFarland testified that the appellees failed to return cigarettes, gas, candy, a Coke

dispenser, cans, bedspreads, twelve sets of brown towels, queen size bed sheets, twelve pillowcases, bowls, a pitcher, a music box, and some metal toys and rings. He testified that these items were worth approximately $4,000.00. Mrs. Burghoff denied taking anything when they left and testified that some revival singers, customers of the resort, had taken some items from one of the cabins. The evidence shows that the Burghoffs attempted to return the resort to the McFarlands for the return of their down payment. The resort sold to the appellees for the sum of $263,000.00. We find there is sufficient evidence to show that the Burghoffs were able to return substantially all of the consideration to the McFarlands.

 The McFarlands finally contend that the chancellor erred in rescinding the contract because the Burghoffs had an adequate remedy at law. In furtherance of this argument, they point to testimony that the water supply problem could be rectified by improvements to the system, ranging in price from $1,200.00 to $4,000.00. They do not take into account their misrepresentation as to the ability to make a living on the property. Money damages would be inadequate to remedy this misrepresentation. We find no error in the chancellor awarding rescission.

The appellants have failed to show any reversible error, and therefore, we affirm the chancellor's decision, as modified.

Affirmed as modified.

CRACRAFT, C.J., and WRIGHT, Special Judge, agree.