PauL RILEY, Individually and as Trustee of
the Riley Family Revocable Trust *v.*
Guy HOISINGTON and Kay Hoisington

CA 02-374                                    96 S.W.3d 743

Court of Appeals of Arkansas
Division IV
Opinion delivered January 29, 2003

348

*Jerry B. Dossey, PLC*, by: *Brian Thomas Burke*, for appellant.

*Clark & Spence*, by: *George R. Spence*, for appellees.

JOSEPHINE LINKER HART, Judge. Paul Riley appeals the trial court's order to rescind a written contract for the sale of real estate. For reversal, appellant argues that: (1) the trial court failed to state the appropriate standard of proof and should have stated whether it specifically found that appellees had proven the elements of fraudulent misrepresentation by clear and convincing evidence; (2) the appellees did not prove all the elements of their claim for fraud; (3) the property had been altered by appellees in such a manner that upon rescission the parties could not be restored to the positions they held prior to the contract; (4) the trial court erred in determining the amount appellant should pay to appellees because the amount reflected the purchase price together with the carpet allowance and that amount should have been reduced by the fair rental value of the property during the time it was occupied by appellees. We affirm the trial court on appellant's first three points and reverse and remand on the fourth point.

On July 6, 1999, appellant, as seller, and Guy and Kay Hoisington, appellees, entered into a real-estate contract for the sale of a house located in Bella Vista for $132,500. On July 9, 1999, the parties executed a second real-estate contract that increased the purchase price to $136,000. The increased price included a "carpet allowance" that enabled appellees to purchase new carpet and pay appellant the original sale price of $132,500 for the house. Appellant provided appellees with a "disclosure statement" between July 6 and July 9, 1999, in which he stated that there had not been any "flooding, drainage, grading problems . . ." on the real estate. The parties closed the transaction on July 16, 1999.

During June of 2000, appellees discovered several inches of water in the basement. Two days later, the basement flooded a second time. In February of 2001, when the basement flooded for the third time, appellees filed suit against appellant and Mitchell Erwin, d/b/a National Property Inspections. Appellees sought rescission of the contract and compensatory damages for expenses incurred as a result of the flooding and for other expenses, to include but not limited to, mortgage payments, taxes, and insurance.

Following a trial on November 22 and 30, 2001, the trial court made the following findings: (1) that appellant made a false representation of material fact when he indicated on the disclosure statement that there had not been any flooding regarding the real estate; (2) that appellant was aware of the falsehood of the representation; (3) that appellant knew the false representation would be relied upon by potential buyers of the real estate; (4) that appellees were justified in their reliance upon the misrepresentation by appellant; (5) that appellees were damaged as a result of their reliance upon the misrepresentation. The trial court granted rescission and entered a judgment for damages. The order required appellant to tender the contract price of $136,000 to appellees, and in addition awarded appellees a judgment in the amount of $3,154.56 for the damages.[1] From that order comes this appeal.

We review equity cases *de novo*. However, we will not reverse a finding of fact of the trial court unless the trial court was clearly erroneous. *Weigh Sys. South, Inc. v. Mark's Scales & Equip., Inc.*, 347 Ark. 868, 68 S.W.3d 299 (2002). A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.*

At trial, both appellees testified that the purchase price of the home was increased from $132,500 to $136,000 to allow for a "carpet allowance" of $3,500 to be paid to appellee. Appellees stated that Mitchell Erwin was hired to perform an inspection of the home, and they relied on his inspection report. Erwin's report did not indicate a problem with regard to the soil settlement or flooding of the real estate. Appellees also received a "disclosure statement" from appellant during the time between July 6 and July 9, 1999. In that statement, appellant answered, "No," when asked if there "had been any flooding, drainage, grading problems, or has water ever stood on the [p]roperty or under any improvement constructed thereon?" Appellees testified that they relied on the

---

[1] The trial court awarded judgment, jointly and severally, against appellant and separate defendant Mitchell Erwin, who had performed an inspection on the house for appellees. The trial court found the damages to be the result of appellant's fraud and Erwin's negligence. However, Erwin did not appeal the judgment.

disclosure statement given by appellant. Specifically, Mr. Hoisington attested that they would have looked for another home had appellant disclosed that water had come into the basement through a crack in the floor.

Accordingly, Mrs. Hoisington testified that the first incident of flooding in the basement occurred around the end of June 2000 when she discovered the entire downstairs area completely engulfed in approximately four inches of water. After the couple unplugged electrical devices and attempted to ascertain the source of the water, Mr. Hoisington telephoned appellant and told him there was water in the basement and inquired about plumbers. Mr. Hoisington testified that appellant came by the house the following day and wanted to know if the water had come into the basement through a crack in the floor as it had previously. According to Mr. Hoisington, he and appellant discussed the repairs made by appellant when water had forced its way into the basement through a crack in the foundation. Mr. Hoisington stated that when he made reference to the disclosure statement, appellant conceded that there had been a problem with the floor.

Appellees testified that after the flooding incidents, they hired Wizard Cleaners, a water extraction company, to clean the basement. Further, they purchased a sump pump to remove the water, and after drying the carpet, they were required to replace the carpet pad. After observing mold growing behind the walls, appellees removed the paneling, treated the walls with mold control, and repainted them.

Appellant testified that he had previous water-drainage problems in 1984 and in 1994 or 1995. According to appellant, in 1984, after water had come into the bathroom in the basement, he had a French drain dug in the back of the house to divert water. After the installation and repairs, appellant denied having any further problems until 1994 or 1995 when water came up through a crack in the floor and soaked the entire carpet in the basement. Appellant repaired the crack and had no further flooding problems. Appellant testified that after learning of the flooding in their basement, he had visited the appellees and had discussed with them the previous water damage and the crack in the floor.

Appellant argues for his first point that the trial court erred when it did not specifically find that appellees had proven the tort of fraudulent misrepresentation by clear and convincing evidence. Appellant asserts that at trial, counselors for both parties were instructed to prepare briefs to include the issue of whether appellees were required to prove the elements of fraudulent misrepresentation by clear and convincing evidence or by a preponderance of the evidence. However, the order by the trial court did not specify which standard it adopted in analyzing the evidence.

In *Strout Realty, Inc. v. Burghoff*, 19 Ark. App. 176, 718 S.W.2d 469 (1986), this court held that when the plaintiff is attempting to overturn a solemn written instrument by proof which alters the written terms of the contract, he must prove the fraudulent misrepresentations by clear and convincing evidence; otherwise the fraud need only be proved by a preponderance of the evidence. Clear and convincing evidence is that degree of proof which produces in the factfinder a firm conviction as to the allegation sought to be established; it is not necessary that the evidence be undisputed to be clear and convincing, so long as it imparts a clear conviction to the mind of the factfinder. *Strout, supra* (citing *Kelly v. Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979)).

In our view, the facts and pleadings of this case required appellees to prove their case by clear and convincing evidence. Even applying the higher standard, we cannot say that the trial court clearly erred. There is sufficient evidence based on the testimony of the witnesses from which the trial court could find that appellant made a fraudulent misrepresentation to the appellees. The evidence demonstrates that appellant conceded that he made a false representation on the disclosure statement and that he was fully cognizant that his statement was not true. Furthermore, appellant conceded that it was reasonable for a potential buyer to rely on the false statement. Moreover, his effort to sell the house established that he intended for the statement to be relied upon. Testimony from both appellees established their reliance on the disclosure statement and damages that resulted from their reliance. Therefore, we affirm the trial court on this point.

For his second argument, appellant asserts that the trial court erred by determining that appellees had proven that appellant *intentionally* misrepresented the condition of the property and that appellees relied on this misrepresentation to their detriment. Appellant contends that his testimony regarding the difference in the water damage he experienced and that of appellees did not indicate that he intentionally failed to inform appellees of the more severe flooding problems experienced by appellees. Thus, he had no reason to foresee the need for disclosure of his flooding problem. As the basis of his argument, appellant relies on the trial court's finding that appellees did not prove that appellant "intentionally pursued a course of conduct for the purpose of causing injury."

■■ Our supreme court has stated that "we have many times held fraud even in the complete absence of any moral wrong or evil intention." *Cardiac Thoracic & Vascular Surgery, P.A. Profit Sharing Trust v. Bond*, 310 Ark. 798, 840 S.W.2d 188 (1992)(quoting *Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987)). In *Cardiac Thoracic* the court discussed *Lane v. Rachel*, 239 Ark. 400, 389 S.W.2d 621 (1965), as follows:

> The *Lane* case also involved an action to rescind a sales contract, cancel a deed, a note and a mortgage and for the recovery from the Seller of the amount paid by the Purchaser on the purchase property. It appeared that the seller, or the seller's representatives, had represented to the buyer that the house in question had an adequate foundation to support its weight. That later proved to be untrue, the house settled and substantial damage resulted, followed by the action to rescind. The seller's defense was that he was unaware of the subsoil conditions which apparently caused the settling and that the assurances given to the prospective purchaser were therefore not fraudulently made. In reversing the trial court in that case and in holding for the purchaser, this Court said:
>
> > "To rescind a contract based upon fraud, it is not necessary that actual fraud exist. It is well settled that representations are construed to be fraudulent when made by one who either knows the assurances to be false or else not knowing the verity asserts them to be true. (Citing cases). In 37 C.J.S. Frauds, § 2, Pg. 211, constructive fraud is succinctly

defined as 'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because its tendency to deceive others *** *Neither actual dishonesty of purpose nor intent to deceive* is an essential element of constructive fraud'. [Emphasis in original]

In the case at bar it is undisputed that the [purchasers] relied, to their detriment, upon the statements and assurances made to them by the [sellers] and these statements proved to be untrue. [Sellers] lack of knowledge of these material representations asserted by them to be true is no defense nor can liability be escaped by their good faith in making the representations." [239 Ark. 400 at 404, 389 S.W.2d 621].

Interestingly, as an additional or alternative basis for its decision, the *Lane* Court also invoked the maxim that if two innocent parties must suffer, the burden must be borne by the one who induced the loss and found that the seller's conduct and assurances induced the loss suffered by the purchasers in that case. That reasoning and that holding might also be apropos to this case.

*Cardiac Thoracic, supra,* at 804–05, 840 S.W.2d at 191–92.

■ To establish fraud, five elements must be proven: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Tyson Foods, Inc. v. Davis,* 347 Ark. 566, 66 S.W.3d 568 (2002).

■ Appellant acknowledged that information regarding the 1984 and mid 1990's flooding incidents was not revealed in the disclosure statement. Notably, appellant conceded in his testimony that the information in the disclosure statement was not correct and that it was reasonable to expect potential buyers to receive and rely on the information provided. Furthermore, appellant concedes in his argument that it is undisputed that appellees have been damaged as a result of the flooding. The testi-

mony of both appellees demonstrated that they relied upon the disclosure statement of appellant. Therefore, evidence existed that appellant intended to misrepresent the condition of the property to appellees and that the appellees relied upon the misrepresentation to their detriment.

▇ Third, appellant argues that the trial court erred when it rescinded the real-estate contract because appellees had made alterations to the property that prevented the parties from being restored to their respective positions prior to the contract. "It is generally recognized that in an action for rescission of a contract in a court of equity, the court applies equitable principles in an attempt to restore the status quo or place the parties in their respective positions at the time of the sale." *Cardiac Thoracic, supra* (citing *Bates v. Simmons*, 259 Ark. 657, 536 S.W.2d 292 (1976)). This court held that "rescission will be granted only when the party asking for it restores to the other party substantially the consideration received." *Strout Realty*, 19 Ark. App. at 186, 718 S.W.2d at 474.

▇ Testimony by appellees established that following the sale, they installed new carpet and replaced the floor covering in the kitchen area with ceramic tile. They installed new light fixtures and ceiling fans, updated the bathrooms, and enclosed a doorway from an upstairs bedroom and cut a new doorway in the hall. Despite the modifications, the house remained substantially the same structure as it had been when appellant sold it to appellees. We cannot say that the trial court was clearly erroneous in finding that upon rescission appellees restored to appellant substantially the consideration they received. Therefore, we affirm on this point.

▇ As part of his fourth argument, appellant contends that the trial court erred in determining the amount of the judgment granted to appellees because the amount included both the purchase price and the carpet allowance. It is undisputed that the original purchase price was $132,500 and that the contractual amount was increased to $136,000 to include the $3,500 "carpet allowance." Testimony of both parties establishes that appellees paid appellant the original purchase price. Further, Mr. Hois-

ington testified that he received a separate check for $3,500 at the time of closing. There was no evidence as to the actual amount appellees paid for the installation of new carpet. The supreme court held that a purchaser was entitled to recover his good faith expenditures even though they added nothing to the present value of the premises. *Ballard v. Carroll*, 2 Ark. App. 283, 621 S.W.2d 484 (1981) (citing *Massey v. Tyra*, 217 Ark. 970, 234 S.W.2d 759 (1950)).

▄▄▄ As the second component of appellant's fourth argument, he asserts that the trial court erred by failing to reduce the amount of judgment by the fair rental value of the property during the time it was occupied by appellees. In *Cardiac Thoracic, supra,* the supreme court stated that a purchaser entitled to rescission has some obligation to the vendor for the purchaser's possession and/or use of the property in question. Further, the supreme court endorsed the proposition that, in a rescission action, the requirement that the "purchasers" pay rent to the "seller" for the time the property is occupied is equitable. *Cardiac Thoracic*, 310 Ark. at 807, 840 S.W.2d at 193 (citing *Bates v. Simmons, supra*).

▄▄▄ Although we agree with appellant that the inclusion of the "carpet allowance" in the contract price for rescission was error, we do not hold that appellees cannot recover the purchase price of the carpet and the other costs expended on the home. The payment of interest and principal, the purchase price of the carpet, and the costs of other home improvements and repairs required by the floods are recoverable. However, the expenditures can be offset by the fair rental value of the property for the time period appellees occupied the premises. We conclude that the trial court should have taken into consideration the law as set forth in *Cardiac Thoracic* and *Massey*; therefore, we reverse and remand on this issue for further findings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

STROUD, CJ., and GRIFFEN, J., agree.