Jeff and Tammy BARRINGER *v.* Eugene and Connie HALL

CA 04-353 202 S.W.3d 568

Court of Appeals of Arkansas
Opinion delivered February 9, 2005

*Roberts Law Firm, P.A.*, by: *Paul M. Gehring*, for appellants.

*Woodruff Law Firm*, by: *Ronald G. Woodruff*, for appellees.

WENDELL L. GRIFFEN, Judge. Appellants Jeff and Tammy Barringer sued appellees Eugene and Connie Hall for fraud and breach of contract in connection with the sale of a home. Following a jury verdict in appellees' favor, appellants filed a motion

for a new trial, which the trial court denied. Appellants now appeal from that ruling and from an order awarding attorney fees to appellees. We affirm.

In mid-2002, appellees sold appellants a home and surrounding acreage in rural Washington County. Prior to the purchase, appellees provided appellants with an owner disclosure form, which stated, *inter alia*, that sewer service on the property was provided by an "individual septic system." In February 2003, appellant Tammy Barringer discovered a sewage backup in the home and called a serviceman. The serviceman, after investigating the problem, informed Mrs. Barringer that the home was served not by a septic tank but by a single pipe leading from the house to the side of a mountain approximately 250 feet away, where it emptied into a ravine.

In March 2003, appellants sued appellees for fraud and breach of contract, asserting, *inter alia*, that appellees had misrepresented that a septic system existed on the property. The case went to trial on November 20, 2003, and the following pertinent testimony was given.[1] Appellant Tammy Barringer testified that, when she experienced problems with sewage backup in February 2003, she called Best Jet Sewer & Drain Service, who, after searching unsuccessfully for a septic tank, eventually located the pipe coming out of the side of the mountain. At that point, Mrs. Barringer said, she realized that the home had no septic system. She also testified that, prior to purchasing the home, she viewed the property with her father, Richard Temple, who asked appellee Eugene Hall where the "septic tank" was. According to Mrs. Barringer, Hall pointed to the right side of the house and said, "it's over there somewhere" and "down there somewhere." Additionally, Mrs. Barringer testified that, at closing, Eugene Hall drew a diagram with lines that went under the house's patio and used the word "septic" in doing so. Finally, she acknowledged that she and her husband had hired an inspector prior to purchase, who reported only certain electrical and plumbing problems that were ultimately remedied by appellees.

---

[1] Appellants' trial testimony also addressed their claims that there were problems with the home's electrical and water systems and that appellees had misrepresented the location and age of the home. However, we confine our discussion of the evidence to allegations regarding the septic system because appellants' motion for a new trial and their argument on appeal focus solely on that topic.

Craig Sheppard of Best Jet Sewer & Drain Service testified that he was the one who discovered the pipe that emptied out of the side of the mountain. He said that the pipe would not be considered a "septic system" because it did not contain a tank for bacterial breakdown of waste and did not contain lines that allow liquids to be leached into the soil.

Appellee Eugene Hall testified that he had been under the impression since purchasing the property from Charles Klim in 1995 that the property had a septic system. When Hall moved his trailer onto the property for the purpose of completing construction on the home, Klim had left a four-inch sewer pipe out of the ground to which Hall could connect.[2] Hall said that he assumed the pipe went into a septic system with lateral lines. He further said that he never saw any sewage running out of the side of the mountain, which was at least 250 feet away from the home, nor did he have any problems with odors or have other occasion to search for the system. Therefore, he said, when he filled out the disclosure form, he believed that there was a working septic system on the property with a tank and lateral lines, even though no one had ever told him that one in fact existed. Hall also testified that, when Richard Temple asked him where the "septic system" was, he said that he had "no idea" but that it was "somewhere out there."

Charles Klim, who sold the property to appellees in 1995, testified that he was the one who had run the sewer line to the side of the mountain. He described the system as an "open-end" sewer, in which the water from the house ran into one pipe, then through a rock formation and out the side of the mountain. According to Klim, the county said that his system was legal. Klim further stated that he did not believe that he ever showed appellees the outlet pipe nor did he discuss the sewer system with them. When he listed the property for sale, he listed it as having a "sewer system."

In addition to the above testimony, the jury was told that the parties had stipulated that there was no septic tank nor lateral lines on the property and that appellants, after purchasing the property, paid $3,800 to have a septic system installed.

Finally, three relevant documents were admitted into evidence. The first was the above referenced owner disclosure form, which stated that the property was served by an "individual septic

---

[2] The evidence indicates that appellees never actually occupied the home but lived in a trailer while they completed the home's construction.

system." The form certified that "the information herein is true and correct to the best of owner's knowledge as of the above date." It further provided that the owner did not possess any expertise in construction, architecture, engineering, or any other specific areas related to the construction or conditions of improvement on the property; that the owner possessed no greater knowledge than that which could be obtained by inspection of the property by potential buyers; that the form was not a warranty of any kind; and that the form was not a substitute for an inspection.

The second document was a real estate contract dated June 11, 2002, wherein appellants agreed to purchase the property for $185,000. The contract provided that appellants agreed to accept the property "as is" and to hold appellees "harmless of any problems relative to the mechanical, plumbing, appliances, structural defect or failure in any of the components of the Property that may exist, be discovered or occur after Closing." Paragraph twenty-five of the contract contained in bold type what was termed a "Buyer's Disclaimer of Reliance," which read in pertinent part:

> BUYER CERTIFIES THAT BUYER HAS PERSONALLY INSPECTED OR WILL PERSONALLY INSPECT, OR HAS HAD OR WILL HAVE A REPRESENTATIVE INSPECT, THE PROPERTY AS FULLY AS BUYER DESIRES AND IS NOT RELYING ON AND SHALL NOT HEREAFTER RELY UPON ANY WARRANTIES, REPRESENTATIONS OR STATEMENTS OF THE SELLER . . . REGARDING THE AGE, SIZE, QUALITY, VALUE, OR CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION ALL IMPROVEMENTS, ELECTRICAL OR MECHANICAL SYSTEMS, PLUMBING OR APPLIANCES OTHER THAN THOSE SPECIFIED HEREIN (INCLUDING ANY WRITTEN DISCLOSURES PROVIDED BY SELLER AND DESCRIBED IN PARAGRAPH 16 OF THIS REAL ESTATE CONTRACT), IF ANY, WHETHER OR NOT AN EXISTING DEFECT IN ANY SUCH REAL OR PERSONAL PROPERTY MAY BE REASONABLY DISCOVERABLE BY BUYER . . . .

Paragraph sixteen of the contract provided that, although a disclosure form had been delivered by appellees to the appellants, that fact neither limited nor restricted the Buyer's Disclaimer of Reliance set forth in paragraph twenty-five. Subsection (B) of paragraph sixteen

reiterated that the disclosure was warranted by appellees to be "true, correct, and complete" to the best of their knowledge.

The third document is an Inspection, Repair, and Survey Addendum signed by appellants prior to closing. It contained a paragraph in bold type titled "Buyer's Agreement to Property Conditions," which provided, *inter alia*, that:

> BUYER WARRANTS, REPRESENTS AND ACKNOWL-
> EDGES THAT BUYER AND ALL PERSONS OR ENTITIES
> DESIRED BY BUYER HAVE INSPECTED THE PROP-
> ERTY TO THE FULLEST EXTENT DESIRED BY BUYER
> AND FIND THE CONDITION OF THE PROPERTY AC-
> CEPTABLE IN ALL RESPECTS. BUYER REAFFIRMS ALL
> DISCLAIMERS SET FORTH WITHIN PARAGRAPH 25 OF
> THE REAL ESTATE CONTRACT . . . THE FACT THAT
> THE BUYER COMPLETES THE PURCHASE OF THIS
> PROPERTY WARRANTS THAT THE BUYER IS COM-
> PLETELY SATISFIED WITH THE CONDITION OF THE
> PROPERTY.

Following presentation of the above evidence, the jury unanimously answered four verdict interrogatories on the elements of fraud and one verdict interrogatory on breach of contract in favor of appellees. Once judgment was entered on the verdict, appellants filed a motion for a new trial asserting that, because appellees had unquestionably misrepresented that there was a septic system on the property, the jury's verdict was clearly contrary to the preponderance of the evidence. *See* Ark. R. Civ. P. 59(a)(6) (2004).[3] The trial court denied the motion in light of testimony that appellees presumed that there was a septic tank on the property and in light of the contractual disclaimers and appellants' professional inspection of the property. Appellants now appeal from that denial.

When a motion for a new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, we affirm the denial of the motion if the jury's verdict is supported by substantial evidence. *See Dovers v. Stephenson Oil Co.,*

---

[3] Appellants also asserted misconduct of the prevailing party as a ground for a new trial. *See* Ark. R. Civ. P. 59(a)(2) (2004). However, appellants make no argument concerning that ground on appeal.

354 Ark. 695, 128 S.W.3d 805 (2003). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* We give the verdict the benefit of all reasonable inferences in accordance with the proof. *See id.* It is only where there is no reasonable probability that the incident occurred according to the version of the prevailing party or where fair-minded persons can only draw a contrary conclusion that a jury verdict should be disturbed. *Id.*

■ Appellants argue first that the jury's verdict on fraud is not supported by substantial evidence. To establish fraud, five elements must be proven: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Riley v. Hoisington*, 80 Ark. App. 346, 96 S.W.3d 743 (2003). Because appellants sought to recover damages rather than to overturn a solemn instrument, they were required to prove these elements by a preponderance of the evidence.[4] *See id.*

The jury, by virtue of its answers to interrogatories, found that appellants proved none of the elements of fraud. Although appellants in their brief challenge the jury's verdict on each element, they primarily direct their argument to the jury's findings on the second and fourth elements. On the second element, the jury was asked, "Do you find from a preponderance of the evidence that [appellees] either knew or believed that the representation was false or they knew or believed that they did not have a sufficient basis to make the representation?" On the fourth element, the jury was asked, "Do you find from a preponderance of the evidence that [appellants] justifiably relied upon the misrepresentation in acting and as a result sustained damages?" The jury answered "No" to both interrogatories.

With regard to the second element, appellants argue that there was no substantial evidence to support the jury's answer of "No" because appellees falsely stated that there was a septic system on the property and appellees had insufficient information upon

---

[4] Appellants' complaint sought both rescission and monetary damages as remedies for appellees' alleged fraud, but in this jury trial appellants sought only monetary damages.

which to make such a statement. Appellants point to the parties' stipulation that there was neither a septic tank nor lateral lines on the property; to Craig Sheppard's uncontradicted testimony that the system on the property was not a septic system; and to appellee Eugene Hall's testimony that, while he thought there was a septic system on the property, he did not actually know if there was.

We first note that appellants cite no authority in support of their argument on this point. Our appellate courts do not consider assignments of error without convincing argument or citation to authority where it is not apparent without further research that the arguments are well taken. *Lackey v. Bramblett*, 355 Ark. 414, 139 S.W.3d 467 (2003).

In any event, when we give appellees the benefit of all reasonable inferences in accordance with the proof, as our standard of review requires, we cannot say that fair-minded persons could only have drawn a conclusion contrary to the jury's. *See Dovers v. Stephenson Oil Co., supra*. The gist of Eugene Hall's testimony is that, while he had not expressly been told that a septic tank was on the property, he presumed that there was because the sewage system worked and all outward indications, such as the pipe to which he connected his trailer and the lack of odor or other problems, supported his presumption. His testimony was buttressed by Charles Klim who testified that, when he sold the property to appellees, he did not show them the pipe that ran to the mountain. In light of this evidence, the jury may well have found that appellees did not make a statement about the septic tank knowing that they had insufficient information to do so.[5]

With regard to the fourth element of justifiable reliance, appellants argue that the jury's answer of "No" was not supported by substantial evidence. They contend that their justifiable reliance could not have been negated by the real estate contract's "as-is" clause or any other contractual disclaimers. In support of their argument, they cite our recent case of *Beatty v. Haggard*, 87 Ark. App. 75, 184 S.W.3d 479 (2004), in which we held that neither an

---

[5] The concept of constructive fraud, which is based upon a breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilty, purpose, or intent of the fraudfeasor, *see, e.g., South County, Inc. v. First W. Loan Co.*, 315 Ark. 722, 871 S.W.2d 325 (1994), is not urged by appellants in support of this point. Therefore, we do not address it.

"as–is" clause nor a Buyer's Disclaimer of Reliance similar to the one in this case barred a home buyer's action for fraud. However, *Beatty* is distinguishable from the case at bar.

In *Beatty*, the sellers of the home represented in a disclosure statement that there had been no structural modifications or other alterations or repairs made to the property and that there had been no settling from any cause. After purchasing the home, the buyers noticed evidence of settling and discovered that the sellers had poured additional concrete along one corner of the home, which the buyers characterized as an attempt to stop the settling. The additional concrete was covered with dirt and grass and was not visible at the time of the purchase to either the buyers or their inspector; nor were the buyers told about the additional concrete. The buyers sued the sellers to rescind the contract for fraud.

██ The trial court held that the buyers failed to prove fraud, but this court reversed and in doing so discussed, among other things, whether the buyers reasonably relied on the sellers' misrepresentation, given that the parties' contract contained an "as–is" clause and a disclaimer similar to the Buyer's Disclaimer of Reliance in this case. In discussing the "as–is" clause, we held that, while the sale of property "as is" generally relieves a vendor from liability for defects, unless the defects are patent, an "as–is" clause does not bar an action by the vendee based on claims of fraud or misrepresentation. We also held that the Buyer's Disclaimer of Reliance excluded from its terms "written disclosures provided by the seller." However, there is no indication that the buyers in *Beatty* signed a disclaimer such as the one contained in the Inspection, Repair and Survey Addendum in the case at bar. That disclaimer provided that the buyers found the condition of the property acceptable in all respects and, by completing the purchase, warranted that they were completely satisfied with the property. Further, *Beatty* did not discuss the effect of language in the owner disclosure form that representations were made to the best of the owners' knowledge; that the owner had no expertise in certain areas; and that the disclosure form was not a substitute for an inspection. We also observe that *Beatty* involved a *de novo* review for clear error while, in the present case, our task is to determine whether there was substantial evidence to support the jury's verdict.

██ In light of the above factors distinguishing *Beatty*, we agree with the trial court that the jury could have found a lack of

justifiable reliance based on appellants' inspection of the property and on the disclaimers and other portions of the sale documents. Therefore, we cannot say that the jury's finding on this element of fraud was not supported by substantial evidence.

Appellant also makes a brief argument regarding the jury's finding that appellees were not liable for breach of contract. The jury was asked, in its last interrogatory, "Do you find from a preponderance of the evidence that the contract required [appellees] to perform any act that they did not perform?" The jury answered, "No." Appellants' argument on appeal, which is unsupported by authority, is as follows:

> [Appellees] also breached the language of paragraph 16(b) of the Contract that stated, "The written disclosure prepared by Seller is . . . warranted by Seller to be the latest disclosure and the answers contained in the disclosure to be <u>true, correct, and complete to the best of the Seller's knowledge</u>." (Emphasis added). According to his testimony, Mr. Hall just did not know either way if the property had a septic system or not, and therefore there was no substantial basis for the jury to find that the Halls did not breach their contract in warranting the "answers contained in the disclosure to be true, correct, and complete to the best of the Seller's knowledge. Simply put, [appellants] did not get the benefit of their bargain.

In other words, appellants contend that appellees breached the contract by representing that the property had a septic system, even though appellees did not know for sure if a septic system existed.

■■ The contract warranted that appellees' disclosures were true, correct, and complete to the best of their knowledge. The jury had before it substantial evidence — the same evidence mentioned earlier in this opinion — that, to the best of appellees' knowledge, there was a septic system on the property. In a different context involving an insurance application, this court held that, when a person is asked to respond to a question to the best of his knowledge and belief, his actual knowledge and belief are relevant in determining whether his response is incorrect. *See McQuay v. Arkansas Blue Cross & Blue Shield*, 81 Ark. App. 77, 98 S.W.3d 454 (2003). Further, the disclaimers pertaining to the sale and the fact that appellants had the property professionally inspected could have convinced the jury that appellants did not justifiably rely on appellees' representation and thus received the benefit of their bargain.

In light of all of the above considerations, we cannot say that the trial court's denial of appellants' motion for a new trial should be reversed.

 Appellants' remaining argument is that the trial court erred in awarding appellees $7,335 in attorney fees as the prevailing party. The award was made pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999), which basically permits recovery of attorney fees in contract actions. *See Meyer v. Riverdale Harbor Mun. Prop. Owners Imp. Dist. No. 1*, 58 Ark. App. 91, 947 S.W.2d 20 (1997). The statute does not, however, permit an award of attorney fees in a tort case. *Id.* Where both contract and tort claims are advanced, an attorney fee award is proper only when the action is primarily based in contract. *Id.*

 Appellants contend that this was not an action primarily based in contract and, therefore, the award of attorney fees was in error. However, we have determined that this issue is moot. The record reveals that, on February 11, 2004, a satisfaction of judgment was entered on appellants' liability for the full amount of the attorney fees. Thus, according to the record, appellants have paid the attorney fees. If an appellant voluntarily pays a judgment, then the appeal from that judgment is moot, and we will not decide it. *See Sherman Waterproofing, Inc. v. Darragh Co.*, 81 Ark. App. 74, 98 S.W.3d 446 (2003). The satisfaction in this case does not mention whether it was voluntarily made, nor could we find any indication in the record or the parties' briefs as to whether it was voluntarily made. However, in *Sherman Waterproofing, supra*, we raised the issue of mootness on our own motion and concluded that, in the absence of an explanation for the payment of a judgment, we would consider it as having been voluntarily paid, thus rendering the issue involving the judgment moot.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.