Jack BAIN; D/B/A Bain & Co. *v.* Thelma DEAL
ET AL

5-5709

475 S.W. 2d 708

Opinion delivered February 7, 1972

*Guy H. Jones, Phil Stratton & Guy Jones, Jr.,* for appellant.

*Spitzberg, Mitchell & Hays,* for appellees.

CARLETON HARRIS, Chief Justice. Appellees, Thelma Deal, and her grandsons, Larry D. Crissler and Kim D. Crissler, instituted suit against appellant, Jack Bain D/B/A Bain & Co., to recover the purchase price paid for stock in a domestic insurance company which sub-

sequently failed. The complaint alleged that appellees purchased 50 shares of Class C stock in Mercury Life and Accident Insurance Company of North Little Rock from one of appellant's agents, Louis C. Donoho, for $1,000.00, and the complaint alleged that Donoho "did employ a fraudulent and deceitful device, scheme and artifice and make untrue statements of material facts and omit to state material facts * * * and did engage in acts, practices and a course of business which operated as a fraud and deceit upon the plaintiffs" in selling them the stock. It was further asserted that the fraud was perpetrated and consummated in part by use of a deceitful circular, and that by virtue of the agency relationship "and also by virtue of having materially aided in the transaction beforementioned, the defendant Jack Bain, d/b/a Bain & Company, is liable for the fraudulent and tortious conduct of Louis C. Donoho". In addition to the $1,000.00, the complaint also sought punitive damages in the sum of $10,000.00. Appellant moved to dismiss the complaint on the basis that the case was brought in the language and by the authority of Ark. Stat. Ann. section 67-1256 (Repl. 1966); that such action had to be brought within two years, and it was asserted that the cause was barred by the statute of limitations. As to a cause of action stated in common law fraud, the motion asserted that no cause was stated. On October 30, 1969, the court entered the following order:

"That the Complaint herein insofar as it attempts to state a cause of action under Arkansas Statutes Annotated 67-1256, is barred by the Statute of Limitations contained in that Statute.

The Court further finds that the Complaint herein does not state a cause of action under the law of Common Law Fraud in the State of Arkansas or a cause of action under any other Statutory or Common Law in the State of Arkansas.

THEREFORE, IT IS HEREBY ORDERED AND DECREED that the Complaint herein be dismissed unless within Ten (10) days of the date of this Order, the Complainant herein amend said Complaint to state

a cause of action justifiable under the Laws of Arkansas.''

Thereafter, on November 5, appellees filed an amended complaint setting out in considerably more detail their allegations of common law fraud and the case subsequently proceeded to trial on the amended complaint and answer filed. At the conclusion of the trial, the court entered its judgment for appellees in the sum of $1,000.00 for damages resulting from the fraudulent sale, and finding that the sale was accomplished by:

"(1) fraudulent misrepresentations as to the book value of the securities involved; and (2) fraudulent misrepresentations as to the amount of profits realized by the company in dealing with Numismatic Securities.''

From the judgment so entered, appellant brings this appeal. For reversal, four points are asserted which we proceed to discuss in the order listed.

I

It is first argued that the claim was barred by the statute of limitations. At the outset, it becomes necessary to give the pertinent dates. The stock was purchased on June 3, 1965, and the suit was filed on March 29, 1968, more than two years from the time of the transaction, but less than three years. As previously stated, the court entered its order on October 30, 1969, holding that no cause of action was stated but giving appellees ten days in which to amend their complaint. It is not necessary that we determine whether the applicable statute of limitations is the three year statute or the five year statute, since we think it is clear that, under the court's order, appellees had the right to amend their complaint—and the pleading filed was an amendment of the original complaint, rather than a new complaint.

From a practical standpoint, it might be mentioned that section 67-1256 clearly provides the statute of limitations to be two years, and it is not logical that a suit would be instituted under that section, when the statute

itself shows such a complaint would be barred. Be that as it may, it would certainly appear, to say the least, that the complaint was not based entirely upon section 67-1256; though some allegations are similar to the wording of the statute, other language is used which is not included in the section. More importantly, relief is sought which is not authorized by section 67-1256; for instance, the complaint seeks punitive damages in the sum of $10,000.00, and punitive damages are not authorized by the section under discussion. At any rate, all of the allegations are consistent with a suit for common law fraud, though it is true that the original complaint appears to plead only conclusions. The amendment filed enlarges upon the general allegations of the first complaint, *i. e.,* they are made more specific, and we do not consider that the amended complaint states a new cause of action. In *Bridgman* v. *Drilling,* 218 Ark. 772, 238 S. W. 2d 645, 'this court said:

"Appellant insists that the trial court erred in overruling the demurrer to the complaint and the amendment thereto and in refusing to direct a verdict in his favor. It is argued that the amendment to the complaint of October 2, 1950, not having been filed within three years from June 23, 1947, the date of the last payment alleged therein, was barred by the statute of limitations when filed because the amendment introduced a new cause of action to which appellant was entitled to plead the statute separately. In overruling this contention the trial court ruled that the amendment to the complaint did not constitute a new cause of action, but related back and became a part of the original complaint.

Our cases hold that where there is an amendment to a complaint stating a new cause of action or bringing in new parties interested in the controversy, the statute of limitations runs to the date of the amendment and operates as a bar when the statutory period of limitations has already expired. * * * If, however, the amendment to the complaint does not set forth a new cause of action, but is merely an expansion or amplification of the cause of action already stated, then the amendment relates back and takes effect as of the date of the commencement of the original action. *Little Rock Traction*

*& Electric Co.* v. *Miller*, 80 Ark. 245, 96 S. W. 993; *Western Coal & Mining Co.* v. *Corkville*, 96 Ark. 387, 131 S. W. 963."

We find no merit in Point I.

## II

It is next asserted that the court erred in finding that appellant had fraudulently misrepresented the book value of the stock. This assertion, along with a contention which will be discussed under Point III, actually challenges the sufficiency of the evidence to sustain the judgment.

Mrs. Deal testified that Mr. Don Donoho came to the cafe in Carlisle which she was operating, introduced himself, and explained that he was working for Bain & Company. She said that he told her that the stocks were making money; that it would be a good investment, and would double in two years. According to the witness, Mr. Donoho said that the stock was worth $24.00 a share; that Mercury Life was in sound financial condition and that it invested in Numismatic Securities. He handed her a circular regarding the stock and she stated that she relied on the printed and written matter set out in the circular in deciding to make the purchase. The printed circular states:

"The future of the Life Insurance Industry appears exceptionally bright, and profits dealing in Numismatic Securities, as well as holding for growth, are fantastic. We believe this Company has good capable management with years of experience. Therefore at the present level (Below Book), we think this stock presents an attractive speculation, for a long term investment."

As to the book value, Ben Larson, senior examiner for the Arkansas Insurance Department, a certified public accountant, testified that he computed the book value of the stock as being the difference between the assets and the liabilities divided by the number of shares outstanding, and he testified that this was the method generally used. He said that he had examined the annual

statement of Mercury Life and Accident for 1965[1] and based on the formula that he used, he found the book value to be $1.46 per share. However, he made two other computations, under other formulas, and the greatest value per share that could be found as of December 31, 1965, was $7.94; the witness testified however that this last was not realistic because it did not account for non-recorded liabilities such as reserve requirements. Larson also testified that the company paid no dividends to stockholders, and that the net loss for that year was $113,000.00.

Louis A. Lanford, engaged in the investment business for years in Little Rock, testified that there was no market in June 1965 for Mercury Life and Accident stock among Little Rock brokers. The witness added that it necessarily did not mean it had no value, but that no broker would pay anything for it.

Mr. Bain, appellant herein, testified that Donoho was authorized to sell the stock for $20.00 per share, and he insisted that the book value of the stock was $24.00 per share. As to differences with Larson, he simply said that Larson computed the book value in one way and he computed it in another, stating that he was guided by Best Insurance Report. According to Bain, his accountant computed the book value by adding capital, surplus, the difference between assets and liabilities, and twice the annual premium income, and then dividing that sum by the number of shares outstanding.[2]

It appears that Larson's formula is the one generally accepted. In Am. Jur. 2d Corporations, § 219, p. 748, it stated:

"The inconclusiveness of the term 'book value' standing alone without additional definition or support has been recognized in some cases. However, in some instances courts have in effect defined the book value of corporate stock in relatively brief and simple terms as

---

[1] Mr. Larson was not with the Insurance Department in 1965.

[2] According to this witness, Mercury subsequently merged with Community National "and they were put out of business in Tulsa, Oklahoma".

the figure obtained upon dividing the amount of the difference between assets and liabilities by the total number of outstanding shares."

In *Jones* v. *Harris*, 388 P. 2d 539, the Supreme Court of Washington said:

"The courts, of course, are not bound irrevocably to a single definition of 'book value'. But, when a term that has a generally accepted meaning is used, the parties are hard pressed afterwards to claim their intent was otherwise. 'Book value' normally means the value of the corporation as shown on the books of account of that corporation, after subtracting liabilities."

Likewise, in *Schumann* v. *Samuels*, 142 NW 2d 777, the Supreme Court of Wisconsin declared:

"The book value is not any arbitrary value that may be entered upon the books of the company but the value as predicated upon the market value of the assets of the company after deducting its liabilities."

Certainly, there was substantial evidence to support the court's finding that there were fraudulent misrepresentations as to the book value of the stock, and we find no merit in this Point.

### III

Having found that the evidence supported the court's finding that fraudulent misrepresentations had been made relative to the book value of the stock, there is no need for a lengthy discussion of the next contention which is that the court erred in finding that appellant had fraudulently misrepresented profits realized by Mercury Life from rare coin transactions. The circular, referred to under Point II, and in addition to what was said about Numismatic Securities in the previous quotation, states:

"First in State: To have official approval of Numismatic Securities, 'Rare Coins'. The Company is a dealer in rare coins and in this operation alone netted over $1.00 per share profit in past year."

According to Mr. Larson, the description in the circular describing profits in Numismatic Securities as "fantastic" was completely without basis, and Larson stated that not only were no profits realized from the company's dealing in these securities, but actually the company experienced a negative income of $63,000.00. Mr. Bain stated that the circular was prepared by the late Hamilton Moses and he trusted the judgment of Moses who "had information on all companies". He said that the information about Numismatic Securities was in national magazines and the Gazette and Democrat. Actually, Mr. Bain's principal defense on both Points II and III was that if any misrepresentations were made, they were innocent statements, *i. e.,* based on misinformation rather than fraud. Even so, the defense would not be adequate, since it is certainly established that misrepresentations were made. In *Miskimins* v. *The City National Bank,* 248 Ark. 1194, 456 S. W. 2d 673, this court stated:

"We have clearly recognized long ago that there may be a cause of action for legal, or constructive fraud, even though there is a complete absence of any moral wrong or evil intention. *Stewart* v. *Clark,* 195 Ark. 943, 115 S. W. 2d 887. This type of fraud is based upon a breach of a legal or equitable duty which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose or intent of the fraud feasor. *Lane* v. *Rachel,* 239 Ark. 400, 389 S. W. 2d 621; *Levinson* v. *Treadway,* 190 Ark. 201, 78 S. W. 2d 59; *Bridges* v. *United Savings Association,* 246 Ark. 221, 438 S. W. 2d 303. Representations are considered to be fraudulent when made by one who either knows them to be false, or, not knowing, asserts them to be true. *Fausett & Co.* v. *Bullard,* 217 Ark. 176, 229 S. W. 2d 490; *Maurice* v. *Chaffin,* 219 Ark. 273, 241 S. W. 2d 257. It may involve a mere mistake of fact. *Kersh Lake Drainage District* v. *Johnson,* 203 Ark. 315, 157 S. W. 2d 39."

In *Kersh Lake Drainage District* v. *Johnson, supra,* constructive fraud was discussed a little more fully as follows:

"The broadest classification of fraud is actual or constructive. To constitute positive or actual fraud, there must be such fraud as affects the conscience; that is, there must be an intentional deception. In other words, active and positive fraud includes cases of the intentional and successful employment of any cunning, deception, or artifice to circumvent, cheat, or deceive another. Constructive fraud, sometimes called legal fraud, is nevertheless fraud, although it rests upon presumption and rests less upon furtive intent than does moral fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place. The conscience is not necessarily affected by it. Indeed, it has been said that it generally involves a mere mistake of fact. Hence, the terms 'constructive fraud' and 'legal fraud' both connote that in certain circumstances, one may be charged with the consequences of his words and acts, as though he had spoken or acted fraudulently although, properly speaking, his conduct does not merit this opprobrium."

There was substantial evidence to support the finding of the court relative to Numismatic Securities.

## IV

Finally, it is asserted that the representations of appellant were not the cause of any damages that Mrs. Deal sustained. This argument is based upon the fact that Mrs. Deal, after purchasing the stock in June 1965, redelivered it to Donoho in September 1965, at which time a promissory note was given from Donoho's mining company. In other words, it is contended that Mrs. Deal sold this stock to Donoho. This was emphatically denied. Mrs. Deal testified that Donoho came to her, asking to borrow the stock, and stating he needed it to invest it in more business. She said he borrowed the 50 shares and told her he would pay her 6% annually, and she further stated that the address given for the mining company was the same address given for Bain & Company. The note and loan agreement clearly refute the argument that the transaction was a sale. In fact, the instrument is rather unusual and possibly could be construed in several different ways. It does, however, refer

to the "use" of the stock on two occasions. Mrs. Deal never did receive any benefits as provided in the note and loan agreement. Any any rate, the damage was sustained when she bought the 50 shares of stock; the loss of the $1,000 came at that time. Mr. Bain admitted that Donoho was a salesman for his company, sponsored by him, and licensed by the State Securities Division. It was admitted specifically that at the time Mrs. Deal purchased the stock, Donoho was authorized to sell stock in Mercury Life and Accident Insurance Company, and that he was authorized to sell it for $20.00 a share. These facts establish the agency of Donoho and there was substantial evidence to hold Bain liable. Mrs. Deal and the grandchildren were damaged for the amount spent for the stock, $1,000, and there was no error in awarding this judgment.

Affirmed.