Mark B. BEATTY and Patsy D. Beatty  *v.*
James G. HAGGARD and Sarah Haggard

CA 03-879                                                  184 S.W.3d 479

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 16, 2004

[Rehearing denied August 25, 2004.]

*James F. Lane, P.A.*, for appellants.

*Graddy & Adkisson, P.A.*, by: *William C. Adkisson*, for appellees.

ANDREE LAYTON ROAF, Judge. Appellants Mark and Patsy Beatty brought an action for rescission of a real-estate contract against appellees James and Sarah Haggard based on constructive fraud. The Beattys appeal from the trial court's decision that they failed to prove either actual or constructive fraud by clear and convincing evidence. On appeal, the Beattys argue that the trial court erred in: (1) finding that the necessary burden of proof for constructive fraud was clear and convincing evidence; and (2) finding that they had failed to prove the necessary elements of either actual or construc-

tive fraud. We agree that the trial court clearly erred in finding that the Beattys had failed to prove the elements of fraud, and reverse and remand.

On April 24, 2000, the Beattys entered into a real-estate contract with the Haggards to purchase their home located in Faulkner County for $174,800. The Haggards provided the Beattys with an owner's property disclosure statement, dated January 10, 2000, in which they indicated that there had not been any "room additions, structural modifications or other alterations or repairs" made since the property was originally constructed; that there had not been "any settling from any cause, or slippage, sliding or other poor soil conditions"; that there had not been any known defects in the structure or substructure of any improvements; and that there were no other known defects in the property.

After discovering evidence of settling in the house, the Beattys filed suit against the Haggards in October 2001. The Beattys alleged in their complaint that subsequent to taking possession, they noticed "cracks in the ceiling of certain areas of the residence, separation of the floor trim in the same areas, cracks in the mortar of the brick work and vertical cracks in the bricks themselves on the north side of the residence." In addition, the Beattys alleged that upon further investigation, they discovered that the house was settling on its north side and that the Haggards had poured additional concrete along and adjacent to the foundation at the northeast corner of the home, "in an apparent (but unsuccessful) attempt to stop the settlement." The Beattys further stated that this additional concrete was covered with dirt and grass and was not visible at the time of purchase. They alleged that the Haggards were aware of the settlement problem, that the problem was not disclosed on the owner's disclosure statement, that they relied upon the disclosure statement, and that they would not have bought the home had the settlement problems been disclosed. The Beattys alleged that the failure to disclose the foundation or settlement problems constituted a constructive fraud against them, and they prayed for rescission of the purchase, or in the alternative, damages for the cost to repair the residence, for loss of value, and other consequential damages.

The Haggards denied the allegations and moved for summary judgment, which was denied by the trial court. The Haggards also filed a motion requesting that the trial be bifurcated on the issues of liability and damages, which was granted.

The evidence presented at trial on the liability issue established that James Haggard was an experienced builder, that the Haggards had the home in question built in 1995 by their son, John Haggard, who was in the business of building homes, and that they were the only occupants of the home until they sold it to the Beattys. In October 1999, James Haggard testified that he noticed some small cracks in the sheetrock above the east window in a bedroom on the northeastern corner of the house and above the interior door in that bedroom. He stated that there was also a small crack above the bathroom window on the north side of the house. Mr. Haggard further discovered some cracks in the mortar of the exterior brick on the north side beneath the bathroom window and on the east side of the house. He called his son out to examine the cracks, and they decided to dig down to the base of the concrete footing of the house along the northeastern corner to see if the cracking was the result of a structural problem.

Mr. Haggard and his son enlisted David Tindall, who used his backhoe to do the digging, and Joe Gormley to assist with the work. Mr. Haggard stated that they dug several feet along the north and east sides, although he stopped at the sewer cutoff on the north side. He testified that they found no cracks or other structural damage to the footing. Instead of replacing the loose dirt where they had dug, Mr. Haggard testified that they decided to pour concrete in the hole because otherwise, when it rained, the soft dirt would have compacted and collected water next to the footing of the house. He stated that this was just a precaution, as they found no structural damage, and that this concrete was not affixed to the foundation with rebar. He then covered up the concrete with dirt, and he testified that the concrete would not have been visible to the Beattys or to the home inspector.

Mr. Haggard testified that he also had someone come out and "tuck point" the mortar that had cracked on the brick exterior of the house. To repair the cracks in the sheetrock in the northeastern bedroom, he put mud on them, repainted, and put a new wallpaper border over them. When the Beattys visited the home prior to their purchase and to their receipt of the disclosure statement, Mr. Haggard testified that he pointed out where the mortar had been tuck pointed, although he did not mention the other repairs or the additional concrete. He further stated that he had accidentally used a different colored mortar when tuck pointing the cracks and that it would have been obvious to anyone that the mortar had been replaced in those areas.

Mr. Haggard testified that all of these repairs were "cosmetic" and that he did not disclose the repairs on the owner's disclosure statement. He stated that he did not mention the excavation and additional concrete in the disclosure statement because there were no questions that would have required him to do so. When asked about the question that stated, "Are there room additions, structural modifications or other alterations or repairs made to the Property since the Property was originally constructed[,]" Mr. Haggard testified that he answered "No" because he interpreted that question as referring only to structural alterations or repairs. Because he stated that all of the repairs he had performed had been cosmetic, not structural, Mr. Haggard did not list them. He also answered in the negative to the question that asked whether there had been any settling from any cause. Mr. Haggard testified at trial that he "had no idea if there was or wasn't settlement at this house," although he did not see any evidence of settling when he dug down to the footing. He further testified that he answered the questions on the disclosure statement truthfully, to the best of his knowledge, and that he had no intent to deceive anyone.

Lyman Walker, a home inspector, testified that he inspected the Haggards' home prior to the purchase by the Beattys. Walker stated that he was not aware of the excavation and additional concrete poured at the northeastern corner of the house or of the cracks in the sheetrock in the corner bedroom. If he had been aware of the additional concrete, Walker testified that he would have included it in his report because it is an "abnormal circumstance," which would merit further investigation as to its purpose. He stated that he would probably have recommended to the Beattys that they have a structural engineer look at the house if he had known about the concrete and that he believed he and the Beattys should have been told about it. Walker testified that he did not recall seeing a different colored mortar on certain areas of the exterior of the home, although he did note in his report that there were some hairline cracks in the exterior brick. Walker stated in his report that these cracks were probably the result of minor settlement and that they should be monitored for a year to eighteen months. He testified that he did not find evidence of any significant settling during his inspection.

According to Walker, minor cracks found in the interior of a home are typically cosmetic in nature. However, when shown a picture of a crack above the east window in the northeastern

bedroom, taken after the Beattys had possession of the house, Walker testified that he would have noted that type of crack in his inspection report, particularly if he had already found cracks on the exterior, because they could be related. When asked what he would have done had he been aware of cracks in the mortar, interior cracks above the window and the interior door opposite that window, and excavation and the installation of additional concrete on the northeast corner, Walker again testified that he would have recommended a structural engineer.

Michelle Henson, a wallpaper hanger, also testified on behalf of the Beattys. She stated that she was removing wallpaper in one of the bedrooms when she found a large crack, a quarter of an inch wide, that ran from the top of a window to the ceiling. She testified that the crack had been patched on top of the original wallpaper and that new wallpaper had been placed over it. Henson also stated that she repaired other cracks over doors or windows in the house.

Mark Beatty testified that he and his wife received a copy of the owner's property disclosure in March 2000 and that it was one of the main documents that they relied upon in purchasing the home. He stated that all of the questions on the disclosure were answered "No," and that they trusted the Haggards' word that there was not anything wrong with the home. Mr. Beatty testified that he did not notice any cracks in the exterior or interior of the home before he purchased it, except for one crack over the hearth. He stated that he was aware that the inspection report mentioned some minor cracks or minor settlement, but that he assumed it was not a major problem because the report did not discuss the issue in depth. Mr. Beatty first learned of the concrete along the north-eastern corner of the house in July 2000, when he was planting shrubbery and his shovel hit the concrete. He phoned Mr. Haggard to ask why the concrete was there, and Mr. Haggard told him that it was there for reinforcement. Mr. Beatty testified that he again phoned Mr. Haggard in August 2000, when he had some foundation experts at the house who needed more information. Mr. Beatty stated that Mr. Haggard told him the size of the concrete and that there was not any rebar in it. The concrete had been poured into a trench two feet wide, two feet deep, and approximately thirteen feet long.

According to Mr. Beatty, the disclosure statement required Mr. Haggard to list all repairs made to the home, and he was misled by the failure to disclose the excavation and additional concrete. Mr. Beatty further testified that this nondisclosure constituted

constructive fraud. Patsy Beatty also testified that if the disclosure statement had mentioned the excavation and concrete at the northeast corner, as well as the sheetrock repairs in the bedroom, they would not have purchased the house, and that the failure to disclose this information constituted constructive fraud.

Stephen Horvath, a licensed real-estate appraiser, testified by stipulation that he inspected the residence on April 10, 2000. During his inspection, Horvath noticed cracks in the mortar on the north and east sides of the house and that mortar work had been performed, but did not see the concrete that had been poured in that area because it was covered with grass. If he had known about the additional concrete, Horvath testified that he would have mentioned it in his appraisal and would have requested that the mortgage company do a structural inspection of the house.

On behalf of the Haggards, David Tindall testified that he assisted in digging down to the footing of the house in October 1999. He stated that the footing was structurally sound and that Mr. Haggard was an honest and truthful person. However, Tindall also testified that he considered digging by the footing to be house repair. He further stated that cracks in the mortar do not indicate whether there is a foundation problem and that a person would not necessarily be concerned about just cracks in the mortar.

John Haggard, the Haggards' son who built the house, testified that he helped his father with the excavation and the pouring of the additional concrete. He stated that there was not anything wrong with the footing and that the concrete was not intended to repair or strengthen the footing, as it was poured beside, not underneath it. However, Joe Gormley, who also assisted in the excavation, testified that the additional concrete was poured so that it would go underneath and support, or join, the footing. Gormley stated that he would not describe their work as a "repair" on the home.

Following the evidence and the submission of briefs as to the correct standard of review, the trial court found that the Beattys failed to meet their burden of clear and convincing evidence and that they failed to prove the necessary elements of either actual or constructive fraud. The Beattys appeal from this decision.

The Beattys argue that the trial court erred in finding that they failed to carry the necessary burden of proof of clear and convincing evidence of constructive fraud. They contend that many cases discussing constructive fraud use a preponderance-of-

the-evidence standard and that there is a distinction between the burden of proof required for actual fraud as compared to constructive fraud, which is what they alleged in this case.

There are cases involving constructive fraud that use a preponderance-of-the-evidence standard. *See, e.g., Roach v. Concord Boat Corp.,* 317 Ark. 474, 880 S.W.2d 305 (1994); *Stewart v. Clark,* 195· Ark. 943, 115 S.W.2d 887 (1938). Other cases have used a clear and convincing, or a "clear, strong, and satisfactory" proof standard. *Knight v. Day,* 343 Ark. 402, 36 S.W.3d 300 (2001); *Lane v. Rachel,* 239 Ark. 400, 389 S.W.2d 621 (1965). Still others have used a "substantial evidence" standard. *Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co.,* 335 Ark. 285, 984 S.W.2d 6 (1998); *Bain v. Deal,* 251 Ark. 905, 475 S.W.2d 708 (1972).

However, these differing standards have been examined and at least partially explained by our supreme court. In *Clay v. Brand,* 236 Ark. 236, 365 S.W.2d 256 (1963), the supreme court noted that two different burdens of proof of fraud had been used in the past with respect to written instruments. "One, the ordinary rule which requires proof of fraud by a preponderance of the evidence and two, the stricter rule which requires proof of fraud by a preponderance of the evidence which is clear and convincing." *Id.* at 241, 365 S.W.2d at 259. Where it is alleged that the contract was obtained by misrepresentation, the preponderance-of-the-evidence standard applies; however, a stricter degree of proof is required when a solemn written instrument is to be upset. *Id.* at 242. In *Clay,* the trial court rescinded a real estate contract on the basis of misrepresentations as to the adequacy of the water supply. *Id.* Finding that the contract was silent with reference to the water supply and that the proof thus did not alter or contradict any of the written terms of the contract, the court found that the preponderance-of-the-evidence standard should apply. *Id.*

This distinction was recognized by this court in *Strout Realty, Inc. v. Burghoff,* 19 Ark. App. 176, 718 S.W.2d 469 (1986), where the purchaser of real estate sought to rescind the contract on the basis of the vendors' fraudulent misrepresentations as the adequacy of the water supply, the income potential of the property, and the amount of acreage conveyed. Finding that the allegation of fraud as to the amount of land to be sold directly contradicted the amount of land set forth in the contract and deed, and also that the allegations of fraud as to the water supply and the income potential

contradict that clause in the contract stating that the purchasers were relying on their own investigation of the matter, this court held that the allegations were attempting to overturn a written instrument by proof that alters its written terms and that the clear and convincing evidence thus applied. *Id.* This court again discussed this distinction in *Riley v. Hoisington*, 80 Ark. App. 346, 96 S.W.3d 743 (2003), where the purchasers of real estate were granted rescission of the contract due to fraudulent misrepresentations on the owner's disclosure statement relating to flooding in the home. We held that the facts and pleadings of the case required that the clear–and–convincing–evidence standard apply. *Id.*

■ Based upon the use of the clear–and–convincing standard in both *Strout Realty* and *Riley*, the trial court did not err in requiring the Beattys to prove constructive fraud, which in this case was alleged based on nondisclosures in the owner's disclosure statement just as in *Riley*, by clear and convincing evidence.

■ The Beattys also argue that the trial court erred in finding that they failed to prove the necessary elements of either actual or constructive fraud. This court reviews equity cases *de novo*; however, the trial court's findings of fact will not be reversed unless they are clearly erroneous. *Riley v. Hoisington, supra*. A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with a definite and firm conviction that a mistake has been made. *Id.*

■■ To establish fraud, the following elements must be proven: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. *Id.* However, to rescind a contract based upon fraud, it is not necessary that actual fraud exist. *Id.* (citing *Lane v. Rachel, supra*). Representations are construed to be fraudulent when made by one who either knows the assurances are false or else not knowing the verity asserts them to be true. *Id.* Constructive fraud has been defined as a breach of a legal or equitable duty, which, irrespective of the moral guilt of the fraud feasor, the law declares to be fraudulent because of its tendency to deceive others. *Id.* Thus, neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud, and a seller's lack of knowledge of the material representations asserted by him to be

true or his good faith in making the representations is no defense to liability. *Id.* In fact, it has been said that constructive fraud generally involves a mere mistake of fact. *Bain v. Deal, supra* (quoting *Kersh Lake Drainage Dist. v. Johnson,* 203 Ark. 315, 157 S.W.2d 39 (1941)).

The Beattys argue that the Haggards' nondisclosure on their owner's property disclosure statement of the excavation and additional concrete constituted constructive fraud.[1] The Beattys contend that they reasonably relied upon the disclosure statement and that they would not have purchased the property had they known about the excavation and additional concrete along the northeastern corner of the house. The Haggards, however, assert that they were not required to disclose the repairs because they were merely cosmetic and not structural, as they did not find any evidence of settling in the exposed footing. The primary disagreement lies in the interpretation of question number 4 on the owner's property disclosure, which states: "Are there any room additions, structural modifications or other alterations or repairs made to the Property since the Property was originally constructed?" The Haggards argue that this question required them to list only structural repairs, while the Beattys contend that all repairs should have been disclosed pursuant to this question. However, under the Haggards' interpretation of this question, which is that the words "alterations" and "repairs" referred only to structural alterations or repairs, there would be no need to follow "structural modifications" with "*other* alterations or repairs." (Emphasis added).

Although the Haggards argued at trial that their actions in excavating and pouring additional concrete along the footing did not constitute a "repair" to the home, they themselves referred to this work as a "repair" on many occasions, including on checks written to pay for the excavation and concrete, on their answers to interrogatories, and in James Haggard's second affidavit. Also, the Haggards' witness, David Tindall, who assisted in the excavation work, testified that he considered digging by the side of the footing and pouring concrete to be house repair. The Haggards also contend that this repair was merely cosmetic because the additional concrete was not affixed in any way to the original footing. However, Mr. Haggard told Mr. Beatty that the additional con-

---

[1] The Beattys do not argue on appeal that the nondisclosure of the repairs made to the interior sheetrock constituted constructive fraud.

crete was there for reinforcement, and Joe Gormley testified that they dug around the footing in such a way that the new concrete would support or join up with the original footing. The home inspector, Lyman Walker, testified that he felt he and the Beattys should have been aware of the repair work along the footing, and both Walker and Horvath, the real estate appraiser, testified that they would have recommended that a structural engineer inspect the house if they had known of the excavation and additional concrete. Thus, the Haggards had a duty to disclose this information on the owner's disclosure statement, and their failure to disclose it constituted a material misrepresentation of fact.

■ The Haggards also argue that the Beattys failed to prove the remaining elements of fraud set out above, such as intent to induce reliance, justifiable reliance, and damages. The Beattys contend, however, that these elements need not be proven for constructive fraud, as compared to actual fraud. As with the standard of review for fraud, case law is confusing as to whether all of the elements, save the false representation of material fact element, which clearly must be proven, must be shown for constructive fraud. While the supreme court in *Farm Bureau Policy Holders & Members*, *supra*, listed the five elements as requirements for constructive fraud, in a later case, *Knight v. Day*, *supra*, the court stated in a footnote that it had inadvertently labeled those elements as those that must be established for constructive fraud, when they are actually the elements of fraud. Regardless of whether a particular case specifically states that these five elements must be proven for constructive fraud, almost all of the cases analyze the proof using these elements. *See, e.g., Knight v. Day, supra.*

■ We further conclude that the trial court clearly erred in finding that the Beattys had failed to prove the remaining elements of constructive fraud by clear and convincing evidence. The Haggards clearly intended for the Beattys to rely on the owner's disclosure statement in deciding whether to purchase the house. In fact, the real estate contract states under Paragraph 16B that a written disclosure has been provided and "is warranted by the Seller to be the latest disclosure" and that the answers in the disclosure are "true, correct, and complete to the best of the Seller's knowledge." Also, the Beattys both testified that they relied upon the representations in the disclosure statement in purchasing the house. The Haggards contend that the Beattys

failed to prove that they suffered damage as a result of their reliance, but, as the Beattys argue, the Haggards filed a motion to bifurcate the trial, which was granted. Thus, there was no evidence presented as to damages at the initial trial on liability. The Beattys did allege in their complaint that they have noticed substantial evidence of settling on the home's north side, however, and there was testimony that they had two different foundation experts come out and look at the house. This is enough to show that they have suffered some damage as a result of their reliance. Of course, they will have the burden to prove the extent and amount of damage at the trial on the damages issue.

The Haggards also argue that an "as is" clause in the real-estate contract, as well as a "Buyer's Disclaimer of Reliance" clause, prevent recovery by the Beattys on the basis of fraud. While the sale of property "as is" generally relieves a vendor from liability for defects in that condition, unless the defects are patent, an "as is" clause does not bar an action by the vendee based on claims of fraud or misrepresentation. 77 AM. JUR. 2D *Vendor and Purchaser* § 327 (2003). Also, as the Beattys contend, the "Buyer's Disclaimer of Reliance" clause excludes from the disclaimer those representations specified herein "*including* any written disclosures provided by the seller." (Emphasis added). Thus, the Haggards' argument that these clauses in the real-estate contract bar this action by the Beattys is without merit. Because the trial court clearly erred in finding that the Beattys failed to prove their claim for constructive fraud by clear and convincing evidence, we reverse the trial court's decision and remand for a determination of damages.

Reversed and remanded.

PITTMAN, HART, NEAL, and BAKER, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent from the decision reached by the majority and would affirm the trial court's decision. I agree with the majority that the burden of proof is the clear and convincing standard articulated in *Riley v. Hoisington*, 80 Ark. App. 346, 96 S.W.3d 743 (2003). However, I think the decision is affirmable under that authority.

Once we determine that the appropriate burden of proof was placed on the appellant at the trial court level, we review the

trial court's decision under the clearly erroneous standard of review. *Burdette v. Madison,* 209 Ark. 314, 719 S.W.2d 418 (1986). We do not decide whether we believe the appellant proved constructive fraud according to the clear and convincing standard. We will only set aside the trial court's finding of fact if it is clearly against the preponderance of the evidence, giving due regard to the trial court to judge the credibility of witnesses. *Id.* I do not believe the trial court's decision was clearly erroneous.

In *Riley,* this court discussed the five elements that have to be proven in order to establish fraud: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; (5) damage suffered as a result of the reliance. Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others. *Riley v. Hoisington,* 80 Ark. App. 346, 96 S.W.3d 743 (2003). We have held fraud even in the complete absence of any moral wrong or evil intention. *Id.*

I am unable to hold that the trial court's ruling was clearly erroneous because appellants did not put forth adequate evidence that appellees made a false representation concerning a *material* fact. The only proof that goes to whether the excavation and additional concrete at the footing of the house is a material fact is the statement by appellants that they would have not bought the home had they known about the excavation ahead of time. Even appellants' witnesses did not testify that the excavation was material. Mr. Walker, a home inspector, testified that had he known about the excavation he would have recommended that the appellants hire a structural engineer to find out the purpose of the concrete. Stephen Horvath, a real estate appraiser, testified that had he known of the excavation he would have mentioned it in his appraisal and would have requested that the mortgage company do a structural inspection of the house.

The court weighed the testimony of appellees and their witnesses against the testimony of appellants and their witnesses. Appellant James Haggard testified that the purpose for the concrete was to provide a solid material outside of the footing and that the excavation was a precautionary measure. Everyone present for the excavation, David Tindall, John Haggard, and Joe Gormley,

agreed with James Haggard that the excavation was to check the footing, the footing did not have any cracks, and the concrete was precautionary.

Similarly, it is not clear whether appellees intended to induce action or inaction in reliance upon the representation. As mentioned above, appellees and their witnesses did not regard the excavation as a material change, but rather a cosmetic change. In order to measure justifiable reliance the trial court had to weigh the credibility of the witnesses. Appellants testified that they would not have bought the house had they known of the excavation and additional concrete. However, the testimony of appellants may not be enough to reverse the trial court's findings. Giving due regard to the trial court's ability to judge the credibility of the witnesses, I would affirm the trial court's decision.