2013 Ark. 246

**Paul HENRY and Crystal Henry, Appellants**

v.

**Willard N. MITCHELL, Appellee.**

**No. CV–13–48.**

Supreme Court of Arkansas.

June 6, 2013.

Rose Law Firm, Little Rock, by: Patrick J. Goss, Bourgon B. Reynolds, and Haley Heath Burks, for appellants.

Johnson, Sanders & Morgan, Mountain Home, by: Roger L. Morgan, for appellee.

DONALD L. CORBIN, Justice.

Appellants, Paul Henry and Crystal Henry, appeal the judgment of the Baxter County Circuit Court awarding damages to Appellee, Willard N. Mitchell, on his complaint against them for misrepresentation in the sale of real property. The circuit court held a bench trial and then entered judgment based on the finding that the Henrys had mistakenly misrepresented the boundaries of the property and therefore committed constructive fraud. For reversal, the Henrys assert the circuit court erred in (1) disregarding an express waiver and release that Mitchell signed, (2) ruling that Mitchell's reliance on the Henrys' marking of the boundaries was reasonable, (3) using an incorrect measure of damages and failing to require Mitchell to mitigate his damages, and (4) failing to apply the correct burden of proof. In addition, as a fifth point on appeal, the Henrys ask this court to abandon the tort of constructive fraud. Because this latter request would require this court to overrule its precedent recognizing the tort of constructive fraud, we assumed jurisdiction of this appeal pursuant to Arkansas Supreme Court Rule 1–2(b)(5) (2012). We find no merit to any of the points on appeal, and we therefore affirm the judgment.

Mitchell initiated the present litigation by filing a petition in the Baxter County Circuit Court alleging a single cause of action for fraud. He alleged that he purchased a house on a lot located in the White River Valley subdivision only after the Henrys had misrepresented the location of the property's corners and lot lines, the location of the water well serving the property, and the availability of an easement to access the driveway leading to the house. The petition alleged that Mitchell had incurred damages of $34,844.43 to place the property in the same condition as represented by the Henrys.

The Henrys answered the petition denying the alleged misrepresentations and asserting several affirmative defenses including waiver and release. The Henrys later filed a counterclaim for breach of contract relating to the waiver and release. The Henrys alleged that, in the real-estate-sales contract, Mitchell had agreed to forgo a survey and to hold them harmless for any boundary line or corner discrepancies that may exist or be discovered after closing. The Henrys further alleged that, in a subsequent closing document entitled "Release," Mitchell accepted the boundaries and corners as marked by the Henrys and agreed to release them from any claims, known or unknown, relating to the negotiation of the real-estate contract. The counterclaim sought damages for costs associated with defending the lawsuit, lost wages, travel expenses, and emotional distress. The counterclaim also sought dismissal of Mitchell's petition.

Mitchell answered the counterclaim and asserted that he agreed to the waiver and release due only to the misrepresentation of the Henrys as to the corners of the property, the location of the well, and the availability of the easement. Mitchell requested that the counterclaim be dismissed.

The circuit court held a bench trial and heard testimony from the Henrys and Mitchell. Mitchell's nephew, Tim Jones, who actually viewed the corners marked by the Henrys, also testified by deposition. The court also heard testimony from the neighbor, Greg Hnedak, who first discovered that the well and the driveway were on his property rather than on Mitchell's property.

Jones testified in his deposition that his uncle, who resided in Ridgeland, Mississippi, asked him to go meet with Paul Henry to verify the corners of a lot and house in the White River Valley area that he was purchasing. According to Jones, Henry flagged the northeast and southeast corners of the property such that a water well and a gravel driveway were located within the eastern boundary of the property being purchased. Jones stated that he specifically asked Henry about the location of the well and that Henry assured him that the well was included on the property his uncle was purchasing. Jones also stated that Henry represented to him that part of the gravel driveway was located on the property his uncle was purchasing and that part of the driveway was an easement. After Jones met with Henry, he communicated Henry's representations to Mitchell.

Mitchell testified at trial that he negotiated the flagging of the corners as part of the offer and acceptance making up the contract. Mitchell explained that his original offer to the Henrys provided that the Henrys would flag all four corners prior to closing, and that the Henrys' counteroffer provided that only the northeast and southeast corners would be flagged. Mitchell testified that he accepted the counteroffer to flag only the two eastern corners. Mitchell clarified that neither his offer nor the Henrys' counteroffer stated that the corners would be flagged according to the best of the Henrys' knowledge

or to the best of their ability. Mitchell declared that he expected Henry to mark the true northeast and southeast corners of the property and that he was not willing to close on the property before Henry did so. Mitchell confirmed that, after his nephew met with Henry, his nephew's description of the corners matched how the corners had appeared when he had viewed the property. He testified that he would not have signed the release document at closing if he had known that the corners had not been flagged properly.

Greg Hnedak testified at trial that he was an architect from Memphis, Tennessee, and that in July 2007 he purchased the unimproved lot bordering the house and the lot Mitchell had purchased from the Henrys in May 2006. Hnedak stated that he did not discover until after closing on his lot that a survey showed that the well supplying water to Mitchell's house was actually located on Hnedak's property and that a driveway being used by Mitchell was also located on his property. Hnedak stated that he never discovered through any title search or otherwise that any easement or any right to maintain that driveway had been given. Hnedak testified that he had purchased the lot and planned to use the entrance as a beautiful part of the property leading to the home he was going to build on the bluff. He stated that he did not think that he would be sharing the driveway with someone else and that having to do so made him feel that his property was not worth as much as he had paid for it. Hnedak testified that he reached an agreement with Mitchell over the well and the driveway. Hnedak stated that he dictated the terms of the agreement and tried to be reasonable, but was frustrated because the look and feel of the property was especially important to him as an architect. Hnedak and Mitchell reduced their agreement to writing, and the agreement was entered into

evidence. The terms of the agreement provided that Hnedak would transfer the real property where the well was located and would also transfer and enlarge the driveway easement. The agreement also required Mitchell to improve the surface driveway and to landscape the area to provide a natural appearance.

Paul Henry testified at trial that when he showed Jones the location of the water well, to the best of his knowledge, the well was on the property Mitchell was purchasing. He also testified that he represented that the road that leads to the back of the property provided access to the property. Henry stated that he realized now that what he marked as the corners were not the true corners of the property. Henry also acknowledged that his contract with Mitchell stated that he would flag the corners but did not state that he would flag the corners to the best of his ability or knowledge. When testifying as a witness for the defense, Henry stated that he marked the corners to the best of his ability and would never have marked them if he had known they had to be correct to the inch. He also stated that the previous owner of Hnedak's lot had given him a thirty-foot easement for the driveway, but the easement was never recorded.

At the conclusion of the bench trial, the circuit court took the matter under advisement. Some months later, the circuit court entered the judgment amending the pleadings to conform to the proof and finding that the Henrys had committed constructive fraud when they mistakenly represented the corners of the property, the location of the well, and the access to the driveway. The circuit court also found that, according to a survey procured by Hnedak, and a later survey procured by Mitchell, neither the well that supplied water to Mitchell's house nor the road that allowed access to the northern part of

Mitchell's property was actually located on Mitchell's property. The circuit court further found that, in order to obtain full access to his property, Mitchell had to negotiate a resolution to the problem with Hnedak. The circuit court stated that it was clear that the Henrys had acted in good faith with no intent to deceive but that the law does not recognize that alone as a defense to constructive fraud. Furthermore, the circuit court found that the Henrys' constructive fraud vitiated the waiver and release. Accordingly, the judgment awarded damages of $34,094.34, as the amount Mitchell expended to acquire the water well and the access to his property from Hnedak. The judgment also dismissed the Henrys' counterclaim. The Henrys have timely appealed.

■■■ The standard of review on appeal from a bench trial is not whether there is substantial evidence to support the findings of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern,* 2010 Ark. 449, 374 S.W.3d 660. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are solely within the province of the fact-finder. *Id.*

### I. *Express Waiver*

■■ For their first point for reversal, the Henrys contend that the circuit court erred in disregarding the express waiver of liability contained in the real-estate contract. We note at the outset that the circuit court did not disregard the waiver; rather, it ruled that the waiver was vitiated by the constructive fraud. Because we affirm for the reasons discussed later herein the circuit court's finding that the

constructive fraud vitiated any waiver or release, we need not address the presupposition in the Henrys' argument that the waiver in paragraph 10 of the contract even applied to option C as negotiated by the parties here.

The real-estate contract contained the following language:

10. SURVEY: Buyer has been given the opportunity to obtain a new certified survey. Should Buyer decline to obtain a survey as offered in Paragraph 10A of this Real Estate Contract, Buyer agrees to hold Seller and the Listing Firm and Selling Firm involved in this Real Estate Contract harmless of any problems relative to any survey discrepancies that may exist or be discovered (or occur) after closing.

_____ A. A new certified survey, in a form satisfactory to Buyer, certified to Buyer within thirty (30) days prior to Closing by a registered land surveyor, will be provided and paid for by: _____ Buyer _____ Seller.

_____ B. No survey shall be provided.

x C. Other. *Seller shall flag all corners prior to closing.*

Should Buyer agree to accept the most recent survey provided by Seller, this survey is for information purposes only and Buyer will not be entitled to the legal benefits of a survey certified in Buyer's names.

In considering this waiver in the contract and whether it released the Henrys from liability for the mistake that the court found to have occurred, the circuit court stated in the judgment that

[a] plain reading of the Section 10 would mean that Mr. Mitchell released the Henrys from the situation which occurred. However, there is another principle to consider. *Fraus omnia Cor-*

*rumpit:* fraud vitiates everything it touches. *See Malakul v. Altech Arkansas, Inc.,* 298 Ark. 246, 766 S.W.2d 433 (1989). The Henrys could not logically place a release provision in the contract, then make a fraudulent misrepresentation, and thereafter try to protect themselves from liability using the release provision. Under the facts of this case, the release provision in the contract provides no protection to the Henrys. Had they not agreed to flag the corners and the sale simply proceeded without a survey, the release provision would have provided protection.

The Henrys specifically challenge the circuit court's reliance on the maxim that fraud vitiates everything it touches. The Henrys argue that, according to *Barringer v. Hall,* 89 Ark.App. 293, 202 S.W.3d 568 (2005), and *Worley v. City of Jonesboro,* 2011 Ark. App. 594, 385 S.W.3d 908, innocent misrepresentations are not sufficient to vitiate contract disclaimers. Mitchell responds that these two cases are not factually similar to the present case because they do not involve a seller who admitted he incorrectly marked the corners. Mitchell contends this case is more factually similar to *Beatty v. Haggard,* 87 Ark.App. 75, 184 S.W.3d 479 (2004), in that *Beatty* involved a seller who, like the Henrys, misrepresented the true condition of the property.

The three cases cited by the parties here do have distinguishing fact patterns, especially as to the specific terms of the particular waivers and disclaimers at issue therein. However, we need not engage in a fact-intensive analysis of those cases to resolve the issue here presented. Contrary to the Henrys' assertion, we need look no further than the case cited by the circuit court to resolve this issue.

The case cited by the circuit court, *Malakul v. Altech Arkansas, Inc.,* 298 Ark. 246, 766 S.W.2d 433 (1989), involved a misrepresentation that amounted to fraud that this court held was sufficient to set aside a release. In so holding, this court noted the general proposition that plaintiffs are entitled to assert that the fraud they claim in the entire transaction fatally infects the release upon which the defendants rely. In support of this general proposition, the *Malakul* court cited *Fitzwater v. Lambert & Barr, Inc.,* 539 F.Supp. 282 (W.D.Ark. 1982), which observed that "[i]t is of course true that under Arkansas law, fraud may be shown to set aside a release. *Creswell v. Keith,* 233 Ark. 407, 344 S.W.2d 854 (1961)." *Fitzwater,* 539 F.Supp. at 292–93. The *Fitzwater* decision also pointed out that under Arkansas law, mutual mistake can provide grounds to set aside a release, as can a unilateral mistake if accompanied by fraud, misrepresentation, or inequitable conduct by the other party. *Id.* (citing *Fullerton v. Storthz,* 182 Ark. 751, 33 S.W.2d 714 (1930), and *Foster v. Dierks Lumber & Coal Co.,* 175 Ark. 73, 298 S.W. 495 (1927)).

The Henrys do not explain what they mean by "innocent misrepresentations" when making their argument here that innocent misrepresentations are not sufficient to set aside a release. It may be that they are referring to their conduct as a mistake, for this court has stated that constructive fraud "generally involves a mere mistake of fact." *Kersh Lake Drainage Dist. v. Johnson,* 203 Ark. 315, 327, 157 S.W.2d 39, 45 (1941). But even assuming that the Henrys are referring to their conduct as a mistake, as the cases from this court cited in *Fitzwater* establish, Arkansas law is clear that mistake is also grounds to set aside a release. The circuit court specifically found that the Henrys committed constructive fraud by mistakenly misrepresenting the boundaries of the property and that the misrepresentation

extended so as to vitiate any waiver and release Mitchell executed. Given the evidence presented at trial, we simply cannot say that the circuit court's conclusion in this regard was clearly erroneous.

## II. *Justifiable Reliance*

■ As their second point for reversal, the Henrys contend that the circuit court erred in finding that Mitchell justifiably relied on the Henrys' representation of the corners, the well, and the driveway. They contend that, although there was a mistake as to the actual corners, Mitchell relinquished any remedies from and against them by agreeing to accept the property "as is" and by releasing them from liability. The Henrys rely on *Barringer*, 89 Ark.App. at 303, 202 S.W.3d at 574, where a seller successfully argued that a "Buyer's Disclaimer of Reliance" and an "Inspection, Repair, and Survey Addendum" barred the buyers from asserting they had justifiably relied on the seller's representations as to the existence of a septic system. Mitchell responds that his reliance was justifiable because he expected the Henrys to mark the true corners of the property; otherwise, he would not have agreed to forego the survey and substitute the Henrys' flagging of the corners.

At the outset, we reject the Henrys' assertion that Mitchell agreed to accept the property "as is"; rather, Mitchell agreed to accept the property as flagged by the Henrys. In the separate closing document entitled "Release," Mitchell agreed that the "property corners ⌐₁₁have been flagged and [that he] accepts same." Thus, Mitchell agreed to accept the boundaries of the property as "flagged."

The circuit court found that the flagging of the corners was performed as part of the agreement to induce Mitchell to purchase the property and that Mitchell could justifiably rely on the Henrys to flag the

corners because a party is presumed to know the location of his boundary lines. Given that both parties negotiated the flagging of the corners as part of their agreement, and given that the Henrys placed no limitations in their counteroffer to flag the corners to the best of their ability or to the best of their knowledge, we cannot say that the circuit court was clearly erroneous in finding that Mitchell justifiably relied on the Henrys to flag the corners accurately.

## III. *Measure and Award of Damages*

■ For their third point for reversal, the Henrys contend that the circuit court applied the wrong measure of damages and failed to hold Mitchell to his duty to mitigate damages. The Henrys cite *Danielson v. Skidmore*, 125 Ark. 572, 576, 189 S.W. 57, 58 (1916), for the proposition that the applicable measure of damages in this case is "the difference between the real value of the property in its true condition and the price at which [the Buyer] purchased it." The Henrys acknowledge, however, that the parties stipulated that the measure of damages would be the cost of putting the property in the condition that was represented to Mitchell. Thus, the Henrys contend that the proper measure of damages should have been the difference between the value of the land in its true condition and either the amount Mitchell paid for the property or the amount required to put the property in the condition ⌐₁₂represented. The Henrys claim, however, that the circuit court awarded damages that reflected the amount required to appease the exorbitant specifications of the neighboring third party and that did not account for Mitchell's duty to mitigate.

In response, Mitchell agrees that the damages he incurred were the result of what his neighbor required and points out

that he did not choose the neighbor with whom he was forced to negotiate to obtain the well and the driveway. Mitchell responds that he did, in fact, mitigate his damages by negotiating with his neighbor to reach a prompt agreement. Mitchell responds further that the Henrys have failed to offer any proof whatsoever to counter the damages he incurred and that it is therefore unclear how he could have mitigated his damages any more than he did.

As for the proper measure of damages and the parties' stipulation thereto, we note the circuit court's accurate statement from the bench that parties cannot stipulate to the law or to legal conclusions. *See, e.g., Roberts v. Roberts,* 2009 Ark. 567, at 5, n. 1, 349 S.W.3d 886, 889, n.1 (quoting 73 Am.Jur.2d *Stipulations* § 4 (2009) (observing that "[p]arties to an action may not stipulate to legal conclusions to be reached by the court")). In the present case, the parties stipulated that the measure of damages would be the cost to restore the property to the condition it was represented. This measure of damages is commonly referred to as "cost-to-repair" damages. Mitchell argued at trial that the difference-in-value measure of damages would yield a figure that exceeded the amount he had expended in restoring the property to the condition as it was represented.

This court has previously affirmed a trial court's award of cost-to-repair damages under similar facts. *See, e.g., Copelin v. Corter,* 291 Ark. 218, 724 S.W.2d 146 (1987) (affirming award of damages for misrepresentation of location of well based on cost to relocate the well and install new pump). The court of appeals has also applied the cost-to-repair damages under similar facts. *See, e.g., Knox v. Chambers,* 8 Ark.App. 336, 654 S.W.2d 582 (1983) (affirming award of damages for misrepresentation that well's supply was adequate for household purposes based on repair costs to provide adequate water supply). Accordingly, we cannot say the circuit court was clearly erroneous in measuring the damages in this case according to the cost to restore the real property to the condition represented by the Henrys.

As for the Henrys' argument that Mitchell expended an unreasonable amount to appease a third party and that he was required to mitigate his damages, we note that it was the Henrys' burden as defendants to prove matters relating to mitigation. *See Minerva Enters. Inc. v. Howlett,* 308 Ark. 291, 824 S.W.2d 377 (1992). The Henrys were required to show both how Mitchell could have taken action to mitigate his damages and the amount of damages that might have been avoided by his proper mitigation. The Henrys failed to offer any such proof. They merely allege that if Mitchell had obtained a survey, he would not have had to expend the $34,094.34 in funds required to appease Hnedak and that a line-by-line analysis of the expenditures demonstrates their unreasonableness and excessiveness. The Henrys offered no evidence of what a reasonable expenditure would have been. The Henrys offered no evidence that Mitchell could have drilled an alternate well or built an alternate driveway at a more reasonable expense; nor do the Henrys assert a dollar amount of damages that Mitchell could have avoided. Therefore, we conclude that the Henrys have not met their burden of proving Mitchell's failure to mitigate his damages and the dollar value of damages caused by such failure.

The circuit court recalled Hnedak's testimony that because he was an architect, the look and feel of arrival to the property was important to him. The circuit court observed that Hnedak thus required Mitchell to chip and seal the driveway, plant grass, shield the well from sight, and

landscape the area, all under the direction of an architect. The circuit court acknowledged that Hnedak's requirements could be argued as excessive, but the court further acknowledged that Mitchell was at Hnedak's mercy. Given this situation, the circuit court concluded that Mitchell should be awarded the sum he expended to acquire access and water to his property. We cannot say this was clearly erroneous, given the unique facts of this case as shown in the evidence presented, and given the failure of proof from the Henrys of anything to the contrary.

## IV. *Burden of Proof*

For the fourth point for reversal, the Henrys contend the circuit court should have required Mitchell to satisfy the clear-and-convincing standard of proof rather than the preponderance-of-the-evidence standard. The Henrys cite *Beatty*, 87 Ark.App. 75, 184 S.W.3d 479, where the court of appeals stated that to upset a solemn written instrument by a claim of fraud, the burden of proof is by clear and convincing evidence, rather than the usual preponderance-of-the-evidence standard. Mitchell does not dispute that the clear-and-convincing standard applies here, and he contends that he has satisfied that standard.

As the court of appeals noted in *Beatty*, this court has observed that

> two different burdens of proof of fraud had been used in the past with respect to written instruments. "One, the ordinary rule which requires proof of fraud by a preponderance of the evidence and two, the stricter rule which requires proof of fraud by a preponderance of the evidence which is clear and convincing."

*Beatty*, 87 Ark.App. at 83, 184 S.W.3d at 484 (quoting *Clay v. Brand*, 236 Ark. 236, 241, 365 S.W.2d 256, 259 (1963)). This court went on to explain in *Clay* that the

" 'clear and convincing' language seems to have evolved from that line of cases which require that in order to cancel or reform a solemn writing because of fraud, accident or mutual mistake the proof must be clear and convincing." *Clay*, 236 Ark. at 241, 365 S.W.2d at 259.

Although the judgment does not recite which burden of proof the circuit court applied, it is evident that the circuit court was satisfied that even the higher standard of clear-and-convincing evidence had been met. The circuit court's order states that "[t]he evidence Mr. Mitchell presented at trial *clearly* proves each element of constructive fraud." (Emphasis added.) The judgment then goes on to state the court's conclusions with respect to each element as follows:

> Mr. Henry's statement as to the location of the corners, albeit by mistake, was false. The location of the corners was a material fact. The flagging of the corners was performed as part of the agreement to induce Mr. Mitchell to purchase the property. A party is presumed to know the location of his boundary lines, thus, Mr. Mitchell could justifiably rely on Mr. Henry's actions. Finally, Mr. Mitchell was damaged as a result of such reliance. While it is clear to the court that Mr. Henry was acting in good faith with no intent to deceive, the law doesn't recognize that alone as a sufficient defense to constructive fraud.

This court has defined clear and convincing evidence as that degree of proof that produces in the finder of fact a firm conviction as to the allegation sought to be established. *Howell v. Scroll Techs.*, 343 Ark. 297, 35 S.W.3d 800 (2001). "[I]t is not necessary that evidence be undisputed in order to be clear and convincing." *Kelly v. Kelly*, 264 Ark. 865, 870, 575 S.W.2d 672, 675 (1979). Our review of the evidence in this case is consistent with the circuit

court's findings. And our review of the circuit court's foregoing conclusions in the judgment convinces us that the circuit court had a firm conviction that the elements of constructive fraud had been adequately proved by clear and convincing evidence. We therefore conclude that the Henrys' fourth point on appeal does not demonstrate any reason for reversal.

## V. *Tort of Constructive Fraud Should No Longer Be Recognized in Arkansas*

For their fifth and final argument on appeal, the Henrys contend that the torts of negligent misrepresentation and constructive fraud are "in all aspects besides name . . . identical" and that because this court does not recognize the tort of negligent misrepresentation, *S. Cnty., Inc. v. First W. Loan Co.*, 315 Ark. 722, 871 S.W.2d 325 (1994), we should overrule our precedent recognizing constructive fraud. Not only do the Henrys raise this argument for the first time on appeal, but also they do not cite to any legal authority supporting their claim that the elements of the two torts at issue are identical. It is well settled that this court does not address assertions of error unsupported by convincing argument or citation to supporting legal authority. *See, e.g., Walters v. Dobbins,* 2010 Ark. 260, 370 S.W.3d 209 (citing *Johnson v. Encompass Ins. Co.,* 355 Ark. 1, 130 S.W.3d 553 (2003)). This is especially true in cases where it is not apparent without further research that the unsupported argument is well taken. *Lackey v. Bramblett,* 355 Ark. 414, 139 S.W.3d 467 (2003). The argument that the Henrys advance on appeal does not appear to be well taken, and we address it no further. *See Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.,* 618 F.3d 762 (8th Cir. 2010) (noting that the doctrine of constructive fraud "does not apply to all material misrepresentations regardless of the defendant's state of mind. If that were the case, then constructive fraud would encompass negligent misrepresentations as well, which is a result precluded by Arkansas law. *See S. County,* [315 Ark. at 722,] 871 S.W.2d at 326"). *Curtis,* 618 F.3d at 775.

We find no merit to any of the five arguments presented for reversal and affirm the judgment.

Affirmed.